IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-10088

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRY BURTON KIMBROUGH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

November 9, 1995

Before REAVLEY and EMILIO M. GARZA, Circuit Judges, and PRADO[*], District Judge.

EDWARD C. PRADO, District Judge:

Terry Burton Kimbrough appeals his convictions for two counts under Title 18 U.S.C. Section 2252(a)(2) and 2 for receipt of child pornography and for two counts under Title 18 U.S.C. Section 2252(a)(4)(B) and 2 for possession of child pornography. For the following reasons, his conviction is affirmed in part and reversed in part.

**BACKGROUND**

In 1992, the United States Customs Service (USSC) became aware of a computer bulletin board system (BBS) in Denmark known as BAMSE. USSC began to investigate BAMSE and discovered the BBS was involved in the international distribution of pornography, including child pornography, via computer. USSC also uncovered two additional Danish BBS's which included child

_____

[*] District Judge of the Western District of Texas, sitting by designation.

pornography. Subscribers to these BBS's can transport or "download" Graphic Interchange Format (GIF) files through modems attached to their computers. Once downloaded, the files can be viewed as pictures on the computer screen and they can be printed. Further investigation disclosed that a person identifying himself as Terry Kimbrough with the defendant's office address and phone number had downloaded two GIF files containing child pornography.

In February of 1993, USSC held a three-day briefing for its agents on its investigation, known as Operation Long Arm, into the illegal importation of child pornography from computer bulletin boards. The agents received training regarding the applicable law, technical methods for computer searches and seizures and evidence handling. After the training program, Agents Kemp Johnson and Eric Rembold commenced further investigation of Kimbrough and, based on the information uncovered, eventually applied for search warrants for Kimbrough's home and business in Abilene, Texas.

. On March 4, 1993, agents executed search warrants for Kimbrough's residence and business. During the execution of the warrants, they seized a number of items including computers and computer related equipment, computer disks and accessories, videocassette and audio cassette tapes, magazines, receipts, ledgers, and various records. Among the seized materials were several depictions of child pornography primarily recovered from the computer equipment.

Kimbrough was indicted in Count 1 and Count 2 for knowingly receiving, by computer, a visual depiction, which had been transported in interstate commerce and the production of which involved the use of a minor engaging in sexually explicit conduct in violation of Title 18 U.S.C. Sections 2252(a)(2) and 2; in Count 3 of knowingly possessing three or more matters which contain visual depictions that had been shipped and transported in interstate and foreign commerce, the production of which involved the use of a minor engaging in sexually explicit conduct and which visual depictions were of such conduct in violation of Title 18 U.S.C. Sections 2252(a)(4)(B) and 2; in Count 4 of knowingly possessing three or more matters which contain visual depictions, produced using materials which had been transported by any means, including interstate and foreign commerce, the production of which involved the use of a minor engaging in sexually explicit conduct and which

2

visual depictions were of such conduct in violation of Title 18 U.S.C. Sections 2252(a)(4)(B) and 2; in Counts 5-7 of knowingly using a means of interstate commerce for the purpose of transporting obscene material in interstate commerce in violation of Title 18 U.S.C. Sections 1465 and 2; and in Count 8 of forfeiture pursuant to Title 18 U.S.C. Section 2253(a). The Government subsequently dropped Counts 5, 6 and 7. After a jury trial, Kimbrough was found guilty of Counts 1-4 and sentenced to a term of imprisonment of 72 months as to Counts 1 and 2 of the indictment and 60 months as to Counts 3 and 4, with all sentences to run concurrently.

**DISCUSSION**

Legality of Search and Seizure Issue

Kimbrough contends that the search warrants were unconstitutional on their face because, considering that many of the items were "presumptively protected speech," the warrants failed to sufficiently specify with particularity the items to be seized. The warrants sought seizure of

> Tapes, cassettes, cartridges, streaming tape, commercial software and manuals, hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media-floppy disks, CD ROMs, tape systems and hard drive, other computer related operational equipment, and other similar materials in addition to, magazines, photographs, negatives, photographic slides, video cassette tapes or other visual depictions or equipment used to visually depict a minor engaging in sexually explicit conduct, and, bills, correspondence, receipts, ledgers, Postal receipts and telephone records all of which show orders and deliveries to or from any known foreign or domestic distributor of child pornography.

The Fourth Amendment prohibits issuance of general warrants allowing officials to burrow through a person's possessions looking for any evidence of a crime. Andreson v. Maryland, 427 U.S. 463, 480, 96 S. Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). A warrant must particularly describe the place to be searched and the person or things to be seized. Id.; United States v. Layne, 43 F.3d 127, 132 (5th Cir.), cert. denied, __ U.S. __, 115 S. Ct. 1722, 131 L. Ed 2d 580 (1995). In testing whether a specific warrant meets the particularity requirement, a court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized. Layne, 43 F.3d at 132. In circumstances where detailed particularity is

3

impossible, generic language is permissible if it particularizes the underlined types of items to be seized. Id. In cases where warrants seek to seize material presumptively protected by the First Amendment, the level to which the items to be seized must be particularly described is heightened. Marcus v. Search Warrant, 367 U.S. 717, 731, 81 S. Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961).

The warrants here are sufficiently particular to withstand Kimbrough's challenge. The language in the warrants properly limited the executing officers' discretion by informing them what items were to be seized. See Layne, 43 F.3d at 132-33 (holding that a warrant seeking "Child pornography; records of victims; drawings; pictures; computer disks; sexual devices; videotapes; child abuse books; magazines; audio tapes; and any other obscene or child pornographic material" was particular enough to limit the officer's discretion).

Kimbrough's reliance on cases involving obscenity is misplaced.[2] The determination of which presumptively protected materials are obscene is a legal one and, therefore, not to be left to the discretion of the executing officers. Identification of visual depictions of minors engaging in sexually explicit conduct, in comparison, is a factual determination that leaves little latitude to the officers. See Id.; See also United States v. Hurt, 808 F.2d 707, 708 (9th Cir.), cert. denied, 484 U.S. 816, 108 S. Ct. 69, 98 L. Ed. 2d 33 (1987) ("Any rational adult person can recognize sexually explicit conduct engaged in by children under the age of 16 when he sees it.") (emphasis in original). We therefore find this contention to be without merit.[3]

---

[2] Kimbrough relies primarily on Marcus v. Search Warrant, 367 U.S. 717, 81 S. Ct. 1708, 6 L. Ed. 2d 1127 (1961); Stanford v. Texas, 379 U.S. 476, 85 S. Ct. 506, 13 L. Ed. 2d 431, (1965); Lo-Ji Sales v. New York, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); and Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 109 S. Ct. 916, 103 L. Ed. 2d 34 (1989).

[3] Kimbrough's complaints regarding the broad seizure of his records and other papers are best addressed in the portion of this opinion focused on the execution of the warrants. The warrants' authorization for seizure of "bills, correspondence, receipts, ledgers, Postal receipts and telephone records all of which show orders and deliveries to or from any known foreign or domestic distributer of child pornography" are certainly sufficiently particular to withstand scrutiny. See United States v. Layne, 43 F.3d 127, 133 (5th Cir. 1995) (finding that seizure of evidentiary materials does not implicate the First Amendment concerns implicated by seizures based on ideas); United States v. Torch, 609 F.2d 1088, 1090 (4th Cir.1979), cert. denied, 446 U.S. 957, 100 S. Ct. 2928, 64 L. Ed. 2d 815 (1980) (finding a warrant for "records, documents and writings related to the transportation, sale and distribution in interstate commerce of lewd, lascivious and filthy films" to describe the things to be seized with sufficient particularity); United

4

Kimbrough further contends that, even assuming the warrants were valid, they were illegally executed. He argues that the law enforcement agents seized virtually every record, document and paper found at the premises, and confiscated every video and audio cassette tape. The Government denies that the search was overbroad. Specifically, the Government, through the testimony of Agent Johnson at the suppression hearing before the trial court, argues that the seizure of all video and audio tapes was necessary because the titles of such tapes were not dispositive of their content and that the absence or presence of child pornography in such items could not be determined by a cursory examination on the premises.

Blatant disregard by executing officers of the language of a search warrant can transform an otherwise valid search into a general one and, thus, mandate suppression of all evidence seized during the search. United States v. Rettig, 589 F.2d 418, 423 (9th Cir. 1978); United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988). The execution of a search warrant "must be one directed in good faith toward the objects specified in the warrant." Gurleski v. United States, 405 F.2d 253, 258 (5th Cir. 1968), cert. denied, 395 U.S. 981, 89 S. Ct. 2140, 23 L. Ed. 2d 769 (1969).

Kimbrough has failed to meet his burden of proof in challenging the execution of the search warrants. See United States v. Carhee, 27 F.3d 1493, 1496 (10th Cir. 1994); United States v. Virgo, 413 F.2d 691, 693 (5th Cir. 1969). The fact that the executing officers chose not to review each video tape, audio tape and document on the premises does not make this search presumptively invalid. While the executing officers seized numerous documents that were later determined to be irrelevant to the case against Kimbrough, the record reflects significant numbers of documents were left at the scenes after an initial review showed them to be not within the scope of the warrants. Kimbrough has not directed our attention to specific examples of seized items that would demonstrate an absence of the executing officers' good faith belief that the items were described in the warrants. We find this argument to be without merit.

---

States v. Jacobs, 513 F.2d 564, 567 (9th Cir. 1974) (finding a warrant for "certain documents pertaining to the interstate shipment of obscene materials" to survive scrutiny).

Multiplicitious Counts Issue

Kimbrough contends that Counts 3 and 4 of the indictment against him are multiplicitous and should have been dismissed or the Government should have been required to elect a single count on which to proceed.[4] We review trial court rulings on multiplicity claims *de novo*. United States v. Brechtel, 997 F.2d 1108, 1112 (5th Cir.), cert. denied, __ U.S. __, 114 S. Ct. 605, 126 L. Ed. 2d 510 (1993). The rule against multiplicity stems from the 5th Amendment to the Constitution which forbids placing a defendant twice in jeopardy for one offense. The rule prohibits the Government from charging a single offense in several counts and is intended to prevent multiple punishments for the same act. Id.; United States v. Heath, 970 F.2d 1397, 1401 (5th Cir. 1992), cert. denied, __ U.S. __; 113 S. Ct. 1643, 123 L. Ed. 2d 265 (1993); United States v. Hurt, 795 F.2d 765, 774 (9th Cir. 1986), amended on other grounds, 808 F.2d 707 (9th Cir.), cert. denied, 484 U.S. 816, 108 S. Ct. 69, 98 L. Ed. 2d 33 (1987). Kimbrough raised this challenge to the charges against him

---

[4]Count 3 charges Kimbrough with
> On or about March 4, 1993, . . . knowingly possess[ing] three (3) or more matters which contain visual depictions that had been shipped and transported in interstate and foreign commerce by computer, the production of which involved the use of a minor engaging in sexually explicit conduct and which visual depictions were of such conduct, to wit, matters entitled:
>> 'CHERRYA.GIF'
>> 'CHERRYB.GIF'
>> 'CHERRYC.GIF'
>> 'WC221501.GIF'
>> 'LITSIS.GIF'
> In violation of Title 18, United States Code, Section 2252(a)(4)(B) and 2.

Count 4 charges Kimbrough with
On or about March 4, 1993, . . . knowingly possess[ing] three (3) or more matters which contain visual depictions which were produced using materials which had been transported, by any means, including interstate and foreign commerce, the production of which involved the use of a minor engaging in sexually explicit conduct and which visual depictions were of such conduct, to wit, matters entitled:
>> 'MBON006.JPG'
>> 'MBON007.JPG'
>> 'DS-X-219.GIF'
>> 'INNOCNT.JPC'
>> 'KID013,GIF'
> In violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2.

prior to trial by way of a motion to dismiss and at trial as part of his motion for judgment of acquittal. The trial court denied both requests.

The Appellee first argues that the grouping of the offenses by the trial court under the Sentencing Guidelines removed the danger of multiple punishments. It contends that for "offenses that are to be grouped under U.S.S.G. § 3D1.2, the applicability of a single punishment prevents any Fifth or Eighth Amendment violations." This argument completely misstates applicable law. This Court has explicitly held that for double jeopardy purposes, sentences are not truly concurrent where a mandatory special assessment is separately imposed on each conviction. United States v. Berry, 977 F.2d 915, 920 (5th Cir. 1992). Kimbrough's sentence included mandatory special assessments for each count. Furthermore, the Supreme Court precedent clearly holds that, for purposes of double jeopardy, a "separate conviction, apart from the concurrent sentence, has potential adverse . . . consequences." Ball v. United States, 470 U.S. 856, 865, 105 S. Ct. 1668, 1673, 84 L.Ed.2d 740 (1985).

The Appellee next argues that the materials that give rise to the two possession-based counts are different because the materials in Count 3 were themselves transported in interstate commerce while the materials referenced in Count 4 were produced using materials that had been transported in interstate commerce. The Appellee attempts to compare the separate counts here with counts charging possession of separate drugs or weapons. However, each count charges possession of "three or more" items and, under the particular facts of this case, each of the items listed in counts 3 and 4 both traveled in commerce (via the computer) and was produced using materials that traveled in interstate or foreign commerce.

Both Counts 3 and 4 charge violations of the same statute on or about the same date and both involve possession of three or more items. The only difference between the charges relied on by the government in their brief is the jurisdictional element -- whether the pictures or the materials used to produce them traveled in commerce. We find this distinction to be artificial and an

7

unlawful attempt to divide a single offense into multiple offenses.[5] See Sanabria v. United States, 437 U.S. 54, 66 n. 20, 98 S. Ct. 2170, 2180 n. 20, 57 L. Ed. 2d 43 (1978)("A single offense should normally be charged in one count rather than several, even if different means of committing the offense are alleged.")

We must defer to the legislature's determination of whether a specific course of conduct constitutes one or more separate crimes. Sanabria, 437 U.S. at 70, 98 S. Ct. at 2182, 57 L. Ed. 2d 43. In construing this statute, we look first to the plain language chosen by Congress. United States v. Barlow, 41 F.3d 935, 942 (5th Cir. 1994), cert. denied, __ U.S. __, 115 S. Ct. 1389, 131 L. Ed. 2d 241 (1995). In this case, the plain language of the statute's requirement that a defendant possess "three or more" items indicates that the legislature did not intend for this statute to be used to charge multiple offenses.[6] Furthermore, to the extent that the statute can be considered ambiguous, the rule of lenity requires us to resolve that ambiguity in favor of Kimbrough. See United

---

[§] We decline to employ the Appellee's suggestion that the charges in question pass the different-element test articulated in Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 2d 306 (1932). That test applies to determinations of whether Congress intended the same conduct to be punishable under two criminal provisions. By contrast, Counts 3 and 4 both charge a violation of the same criminal provision. See Sanabria v. United States, 437 U.S. 54, 70 n. 24, 98 S. Ct. 2170, 2182 n. 24, 57 L. Ed. 2d 43 (1978). That criminal provision states, in relevant part,

> (B) [Any person who] knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if-

> (I) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

> (ii) such visual depiction is of such conduct;

> shall be punished as provided in subsection (b) of this section.

> Title 18 U.S.C. §2252(a)(4)(B).

[6] It is this language that distinguishes the offense of possession of child pornography from the offenses of transporting and receiving child pornography for purposes of the multiplicity argument. Cf. United States v. Cipollone, 951 F.2d 1057, 1058 (9th Cir. 1991).

States v. Cooper, 966 F.2d 936, 943 n. 11 (5th Cir.), cert. denied, __ U.S. __, 113 S. Ct. 481, 121 L. Ed. 2d 386 (1992)("When Congress fails to indicate the allowable unit of prosecution with clarity, doubt as to congressional intent should be resolved in favor of lenity for the accused.")  We find that Counts 3 and 4 of Kimbrough's indictment are multiplicitous.  See Bell v. United States, 349 U.S. 81, 84, 75 S. Ct. 620, 622, 99 L. Ed. 905 (1955) (holding "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be respolved against turning a single transacion into multiple offenses").  Therefore, the trial court should vacate Kimbrough's conviction on either of Counts 3 or 4. See Heath, 970 F.2d at 1402; Brechtel, 997 F.2d at 1112.

Kimbrough further argues that his entire conviction should be reversed as he has been prejudiced by the multiplicitous indictment through the possibility that the repeated assertions of details regarding the two counts could have confused the jury by suggesting that several crimes were committed rather than one.  We do not find that the trial court's refusal to dismiss one of the two counts requires reversal of Kimbrough's entire conviction.  The trial court charged the jury that, "Each count and the evidence pertaining to it should be considered separately."  Kimbrough has not presented specific factual allegations of potential confusion.  We find that Kimbrough has failed to demonstrate that any jury confusion was sufficient to rise to the level of a constitutional violation.

Access to Evidence Issues

Kimbrough next argues that the Government's refusal to allow him to copy the items of evidence charged in the indictment and in restricting his access to the evidence violated his constitutional rights to due process and effective assistance of counsel.   On September 10, 1993, the trial court granted Kimbrough's motion for discovery to the extent that it requested information discoverable pursuant to Federal Rule of Criminal Procedure 16 and the lines of cases stemming from Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963),  and Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).  The court ordered the government to "make discovery and give inspection" on or before September 17, 1993.

Kimbrough's motion had requested inspection and copying of the materials in

question.  Rule 16(a)(1)(C) provides in relevant part:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs [and] tangible objects . . . which are within the possession . . . of the government . . . and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Fed. R. Civ. P. 16(a)(1)(C).    Despite Kimbrough's requests and the language of Rule 16, the Government refused to allow Kimbrough to copy the charged items of child pornography. Kimbrough moved for dismissal of Counts 1-4 of the indictment based on the Government's refusal to allow copying.   He also moved for a continuance and to designate the matter as a "complex case" pursuant to the Speedy Trial Act.  See 18 U.S.C. §3161(8)(B)(ii).  In response, the government offered to take the child pornography to Kimbrough's expert to save the expert the trip to San Angelo.  The Government also offered to allow Kimbrough to examine the child pornography at the United States Customs Service office, the United States Attorney's office or defense counsel's office. The trial court denied Kimbrough's motions.

Child pornography is illegal contraband.  See 18 U.S.C. § 2252(a)(4); Tex. Penal Code § 43.26; New York v. Ferber, 458 U.S. 747, 756-59, 102 S. Ct. 3348, 3354-55, 73 L. Ed. 2d 1113 (1982).  We decline to find that Rule 16 provides such contraband can be distributed to, or copied by, the defense.  However, even if there was a Rule 16 violation, Kimbrough's argument fails. The Government's offer to make the materials available for inspection but not to allow them to be copied was reasonable.  Furthermore, Kimbrough has failed to demonstrate that any actual prejudice arose from his inability to procure copies of the charged items.  His conclusory assertion that the amount of material seized and the time it took the Government agents to review the material demonstrates he was precluded from having an adequate opportunity to review the material and obtain an expert for trial is simply insufficient.  See United States v. Cronic, 466 U.S. 648, 663, 104 S. Ct. 2039, 2049, 80 L.Ed.2d 657 (1984) ("Neither the period of time that the Government spent investigating the case, nor the number of documents that its agents reviewed during that investigation, is necessarily relevant to the question whether a competent lawyer could prepare to defend the case

10

in [the time available]. The Government's task of finding and assembling admissible evidence that will carry its burden of proving guilt beyond a reasonable doubt is entirely different from the defendant's task in preparing to deny or rebut a criminal charge.") We find that any prejudice or technical violation of Rule 16 is insufficient to comprise a deprivation of Kimbrough's constitutional rights. We therefore find this contention to be without merit.

Fair Trial Issues

Kimbrough contends that he was denied a fair trial because he was refused an adequate opportunity to prepare for trial and because the District Court admitted numerous Government exhibits despite the Government having listed them as exhibits on the day of trial. A trial court's denial of a continuance is reviewed for abuse of discretion, viewed in light of all the circumstances, and requires a defendant to show serious prejudice. United States v. Kelly, 973 F.2d 1145, 1147-48 (5th Cir. 1992); United States v Terrell, 754 F.2d 1139, 1149 (5th Cir.), cert. denied, 472 U.S. 1029, 105 S. Ct. 3505, 87 L. Ed. 2d 635 (1985).

One month before trial, Kimbrough filed a motion pursuant to Title 18 U.S.C. Section 3161(8)B(ii) requesting a continuance based in part on his counsel's desire to have access to the charged material. The following day, September 10, 1993, the Government sent Kimbrough's counsel a telefax indicating that the materials seized from Kimbrough's residence and business would be available for viewing the week of September 20th through the 24th of 1993. Kimbrough then filed a supplement to his motion for continuance arguing that the Government's "delay in making available to the defense all material in this case, [rendered] it impossible for [him] to be adequately prepared for trial by October 4, 1993." The trial court denied both motions without elaboration.

On October 6, 1993, the Government tendered its exhibit list containing 20 exhibits. The morning of trial, the Government submitted an amended exhibit list containing more than 70 exhibits. Kimbrough objected on the record to the introduction of these new exhibits. The Government responded that the earlier exhibit list had included most of the exhibits on the amended list and had merely not listed them individually. The Government noted that the remainder of the new

11

exhibits were added in response to the defendant's exhibit list. The trial court found that the arguments were best taken up on an item-by-item basis as the exhibits were offered during the trial. Kimbrough made such objections as the trial progressed and the trial court overruled those objections.

Although we cannot condone unreasonable restriction of meaningful access to potential exhibits, Kimbrough has not shown the serious prejudice necessary to succeed on this argument. Any error, therefore, was harmless. Kimbrough's counsel was given two weeks notice of the week that the exhibits would be available for his inspection. As discussed above, Kimbrough's conclusory assertion that the amount of material seized and length of the Government's review of the material demonstrates prejudice is insufficient to succeed on this argument. See Cronic, 466 U.S. at 663, 104 S. Ct. at 2049, 80 L. Ed. 2d 657. Kimbrough has failed to support his assertions that he was precluded from having an adequate opportunity to review the material or obtain an expert for trial The nature of the defense raised -- that the depictions had been altered and were not of actual children -- would not require review of each document. Furthermore, while Kimbrough claims it was necessary for him to "consult with experts in the field of computer technology and pediatric and adolescent anatomy . . . and interview potential witnesses involved in the Government's investigation," he has failed to show the connection between his failure to accomplish these tasks and the trial court's denial of his motions for continuance. Similarly, he argues it was necessary to "have an analysis conducted of the computer files seized" but fails to describe what type of analysis would have been done and what he expected the analysis would have demonstrated. On the facts and arguments before us, we are unable to say that the trial court's decision to deny Kimbrough's motions for continuance prevented him from receiving a fair trial. We therefore find this argument to be without merit.

Kimbrough's argument regarding the Government's amended exhibit list is similarly unconvincing. The Government contends that the expanded exhibit list added only two pieces of evidence, both of which were necessary for rebuttal of Kimbrough's defense. The Government contends that the remainder of the list merely specified which portions of the previously identified

exhibits were to be introduced.  Kimbrough, who bears the burden on this issue, has failed to rebut the government's assertion and an examination of the record supports the Government's contention. We find Kimbrough's assertion that he was unfairly prejudiced by the admission of exhibits listed in the Government's amended exhibit list to be meritless.

Constitutionality of Title 18 U.S.C. Section 2252 Issues

Kimbrough contends that Title 18 U.S.C. Section 2252 is unconstitutional.  He adopts the arguments of the Ninth Circuit holding the statute to be unconstitutional for lacking a scienter requirement for the age of minority.  See United States v. X-Citement Video, Inc., 982 F.2d 1285 (9th Cir. 1992), rev'd   __ U.S. __, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994).  Since the briefing on the case at bar, the Supreme Court has held that Section 2252 passes constitutional scrutiny because the term "knowingly" in Section 2252(a)(1) and (a)(2) "extends to both the sexually explicit nature of the material and to the age of the performers."  United States v. X-Citement Video, Inc., __ U.S. __, 115 S. Ct. 464, 472, 130 L. Ed. 2d 372 (1994).  Thus, Kimbrough's argument as to Counts 1 and 2 is without merit.  Furthermore, as the language and composition of Section 2252(a)(4) parallels the language in Section 2252(a)(1) and (a)(2), Kimbrough's argument is without merit as to Counts 3 and 4 as well.

Jury Instruction Issue

Kimbrough contends that the jury instructions did not explain the Government's burden on proving the *mens rea* as to each element of the offenses.  The Court instructed the jury:

> As to counts one and two, Title 18, United States Code, Section 2252(a)(2), makes it a crime for any person to knowingly receive any visual depiction shipped or transported in foreign commerce by any means, including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct, and such visual depiction is of such conduct.
>
> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

13

First: That the defendant knowingly received certain visual depictions;

Second: That such visual depictions were shipped or transported in foreign commerce;

Third: That such visual depictions were shipped or transported in foreign commerce by any means, including by computer;

Fourth: That the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct;

Fifth: That such visual depictions are of minors engaged in sexually explicit conduct; and

Sixth: That the defendant knew that at least one of the performers in such visual depictions was a minor.

The instructions as to counts three and four are substantially similar but substitute the possession language for the receiving language. Kimbrough argues that the Court should have instructed the jury that "it must find Defendant knew the producing of the depiction involved the actual use of a minor engaging in sexually explicit conduct."

As noted above, in X-Citement Video, Inc., 115 S. Ct. at 472, the Supreme Court held that the term "knowingly" in Section 2252(a)(1) and (a)(2) "extends to both the sexually explicit nature of the material and to the age of the performers." See also, United States v. Burian, 19 F.3d 188, 191 (5th Cir. 1994) (holding that Section 2252 requires "actual knowledge or reckless disregard of a performer's minority."). The trial court specifically instructed the jury the Kimbrough had to know at least one of the persons depicted was a minor. Further instruction regarding the age of the performers would have been redundant and is not required by the statute or the case law. Had the jury believed Kimbrough's defense -- that the depictions had been altered and were not of actual children -- they could have easily found so applying the instructions as given. The jury instructions properly charged scienter with regard to the age of the performers.

Sentencing Guidelines Issues

Kimbrough objects to three aspects of his Presentence Report ("PSR") and the resulting calculation of his sentencing guidelines. In examining the sentence imposed, we review the

14

trial court's findings of fact for clear error and review purely legal conclusions or interpretations of the meaning of a guideline *de novo*. United States v. Meija-Orosco, 867 F.2d 216, 221 (5th Cir. 1989), cert. denied, 492 U.S. 924, 109 S. Ct. 3257, 106 L. Ed. 2d 602 (1989); United States v. Dean, 59 F.3d 1479, 1494 (5th Cir. 1995). We review the trial court's determination "that conduct is relevant to the offense of conviction . . . under a clearly erroneous standard." United States v. Cockerham, 919 F.2d 286, 289 (5th Cir. 1990).

A. Two Level Increase for Prepubescent Minor or Minors Under the Age of 12

Kimbrough objected at sentencing to the increase for receiving materials involving prepubescent minors or minors under the age of 12. The PSR recommended this two-level increase under U.S.S.G. Section 2G2.2(b)(1). Kimbrough contends that the Government failed to produce any evidence to show that he intended to receive such materials.

At trial, United States Customs Office Agent Eric Rembold testified that a listing of a file entitled "BAM Young List" had been retrieved from Kimbrough's office computer. On that list, file FAM03.GIF is described as "Eight Years Indian Girl" and file PPO4@.GIF includes the words "Preteen School Girl" in the description. Agent Rembold further testified that both FAM03.GIF and PPO4@.GIF were retrieved from computer disks obtained during the execution of the search warrants and that both had been downloaded to Kimbrough's computer from BAMSE. We find that the trial court heard sufficient evidence, even apart from that contained in the PSR, to conclude that Kimbrough intentionally ordered and possessed child pornography which depicted prepubescent minors or minors under the age of 12, or, at the very least, had reckless disregard of the age of the performers. See Burian, 19 F.3d at 191. We therefore find no clear error in the two-level enhancement pursuant to U.S.S.G. Section 2G2.2(b)(1).

B. Four Level Increase for Material Portraying Sadistic or Masochistic Conduct

Kimbrough also objected at sentencing to the 4 level increase for material portraying sadistic or masochistic conduct or other violence. The PSR recommended this four-level increase under U.S.S.G. Section 2G2.2(b)(3). Kimbrough argues that the material involved in the counts of conviction did not portray such conduct and that, at any rate, there was no evidence that

15

he intended to receive such material.

At trial, Agent Rembold testified that Kimbrough had downloaded file MBON006.JPG and file MBON007.JPG from the BAMSE. He further testified that Kimbrough's computer contained file descriptions of these two files: MBON006.JPG is described as "Bound and Gagged Spread in Chair" and MBON007.JPG is described as "Same Girl Almost Same Position." The PSR stated that "Two of the child pornography pictures admitted into evidence are those of a female minor in bondage. Adult pornography possessed by the defendant also displayed sado-masochistic acts." We find that the trial court heard sufficient evidence at trial to conclude that Kimbrough intentionally ordered and possessed pornography which depicted sadistic or masochistic conduct. We therefore find no clear error in the four-level enhancement pursuant to U.S.S.G. Section 2G2.2(b)(3)[7].

C. Five Level Increase for Distribution of Obscene Material

Finally, Kimbrough objected at sentencing to the five-level increase for his purported intent to distribute child pornography. The PSR recommended this five-level increase under U.S.S.G. Section 2G2.2(b)(2). He argues that there was no evidence that he intended to distribute the material.

A sentencing court must be afforded wide discretion in the sources of information it may consider. United States v. Schmeltzer, 20 F.3d 610, 613 (5th Cir.), cert. denied, __ U.S. __, 115 S. Ct. 634, 130 L. Ed. 2d 540 (1994). Therefore, Kimbrough bears the burden of demonstrating that information the trial court relied on in sentencing is "materially untrue." See United States v. Puig-Infante, 19 F.3d 929, 943 (5th Cir.), cert. denied, __ U.S. __, 115 S. Ct. 180, 130 L. Ed. 2d 115 (1994); United States v. Flores, 875 F.2d 1110, 1113 (5th Cir. 1989).

At sentencing, Agent Rembold testified that he recovered evidence from

---

[7] Kimbrough objects to the use of adult pornography to enhance his sentence because private possession in the home of such materials is presumptively protected by the First Amendment. See Stanley v. Georgia, 394 U.S. 557 (1969). We need not reach the question of whether such adult pornography can be considered for sentencing purposes as the child pornography admitted at trial provides sufficient basis to affirm the trial court's ruling.

Kimbrough's office computer and a back-up tape which showed Kimbrough had set up his own bulletin board system named "Unbridled, Unlimited." A bulletin board system is designed to distribute and receive files. Agent Rembold testified that Kimbrough's bulletin board system included closed files containing pornographic material depicting children. Agent Rembold also testified that the search had uncovered advertisements for "Unbridled, Unlimited" which indicated that the bulletin board was a sexually oriented bulletin board. Agent Rembold testified that he found no evidence to show Kimbrough had actually engaged in a commercial distribution of the pornography.

Kimbrough offered no evidence to rebut Agent Rembold's testimony. Under these circumstances, the sentencing court was justified in relying on the testimony and on the PSR in finding that the five-level increase was warranted.

Cumulative Effect Issue

Finally, Kimbrough argues that even if no single alleged impropriety rose to the level of reversible error, taken together, their cumulative impact so prejudiced him as to require reversal of his conviction. See United States v. Diharce-Estrada, 526 F.2d 637 (5th Cir. 1976). We find, with the exception of Kimbrough's multiplicitous argument, Kimbrough's arguments to be without merit. Kimbrough's current argument merely restates arguments we have already rejected and completely fails to specify how the cumulative effects of these events prejudiced him. We therefore reject this argument.

**CONCLUSION**

We affirm the judgment of conviction regarding Counts One and Two. We reverse as to Counts Three and Four and remand for the trial court to vacate Kimbrough's conviction on either of those counts and to resentence Kimbrough if the trial court chooses to do so. AFFIRMED IN PART AND REVERSED IN PART.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

-17-

Although I concur in most of the opinion of the Court, I dissent from Court's treatment of the "Multiplicitous Counts Issue." I am not convinced by the majority's statement that "[i]n this case, the statute's requirement that a defendant possess 'three or more' items would seem to indicate that the legislature did not intend for this statute to be used to charge multiple offenses." I believe the majority is reading too much into the "three or more" language.

Section 2252(a)(4)(B) states a crime of *possession*, with three alternative grounds for asserting jurisdiction under the Commerce Clause. Any person who

> (B) knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if) )

such visual depictions involve child pornography, violates 18 U.S.C. § 2252(a)(4)(B). A conviction thus requires a showing that the defendant knowingly possessed 3 or more items depicting child pornography, and that each of these items also satisfies *one* of the alternative grounds for jurisdiction. The three items must each be shown to have *either* been "mailed," or "shipped or transported" in interstate commerce, or "produced" from an item that was mailed or so shipped or transported. The jurisdictional requirement does not change the basic nature of the item or the crime, which is *possession* of *child pornography*. The three alternative jurisdictional grounds merely allows a federal court to decide the underlying violation of possession, it does not alter what is being possessed.

I therefore agree with the majority that the jurisdictional difference between the two sets of items in Counts 3 and 4 is insufficient by itself to support separate counts. The Government could not, for example, plead the *same three items* in separate counts merely because the same three had been "shipped" in interstate commerce *and* "produced" using materials which had been mailed or so shipped. The key, rather, is whether the items are in fact distinct and different items, regardless of whether they were "mailed," "produced," or "shipped."[8]

---

[8] The visual depictions referred to in the separate Counts 3 and 4

While it may be true that "[a] single offense should normally be charged in one count rather than several, even if different means of committing the offense are alleged," *Sanbria v. United States*, 437 U.S. 54, 66 n.20, 98 S. Ct. 2170, 2180 n.20, 57 L. Ed. 2d 43 (1978), we have held that the act of mailing three child-pornography photographs in separate envelopes may be punishable in three separate counts, even though the three photographs were mailed at the same time. *See United States v. Gallardo*, 915 F.3d 149, 151 (5th Cir. 1990) ("With respect to the child pornography statute, each separate use of the mail to transport or ship child pornography should constitute a separate crime because it is the act of either *transporting or shipping* that is the central focus of this statute.").[9] In the context of mail fraud, we have also held that "[e]ach separate use of the mail in furtherance of [a scheme to defraud] constitutes a separate crime." *United States v. Blankenship*, 746 F.2d 233, 236 (5th Cir. 1984).

The first two sections of the child pornography statute and the mail fraud statute speak of "*any* visual depiction" and "*any* scheme or artifice" (or "*any* counterfeit or spurious coin") respectively. "*Any*" is synonymous with "one or more." And we have held that a prosecutor has discretion to bring a single count or several counts where there is more than one item. Why should we read the phrase "*three or more*" in a more restrictive manner? Under the majority's interpretation of the statute, a prosecutor could only charge a defendant with one count under § 2252(a)(4)(B) whether he possessed three books or several thousand.[10] I believe that some additional authority, in

appear to be ten different items.  That is, the depictions listed in Count 3)) "CHERRYA.GIF", "CHERRYB.GIF", "CHERRYC.GIF", "WC221501.GIF", and "LITSIS.GIF"))appear to be different depictions from those listed in Count 4))"MBON006.JPG", "MBON007.JPG", "DS-X-219.GIF", "INNOCNT.JPC", or "KID013.GIF". Accordingly, I believe the Government has not alleged the "same three items" in separate counts.

[9]
[2]
This language is quoted with approval in *United States v. Cipollone*, 951 F.2d 1057, 1058 (9th Cir. 1991), cited by the majority in footnote 6.

[3]
My research has not uncovered any case that addresses the issue of multiple counts under this provision.  In every case, the prosecution

the form of legislative history or analogous case law, should be required before we assume that Congress intended to distinguish this section of the statute from the other sections by limiting the prosecutor's discretion to bring multiple counts.[11]

It is not obvious how Congress could have written this provision to make it clearer that multiple counts were permitted. It would have been confusing to omit the "or more" language from the "three" because this would seem to suggest that the possession of *four or more* items would *not* be a violation. The phrase "*at least* three" does not say anything different from "three or more." Nor do I believe that Congress's meaning would have been much clearer if they had stated "*any* three or more," even though this would have more closely paralleled the preceding provisions.[12]

Therefore, it is more reasonable to assume that Congress simply wanted to heighten the evidentiary burden for convictions based on the mere possession of child pornography by requiring the Government to prove at least three items, but that Congress did not intend to eliminate the prosecutor's discretion to bring additional counts where there were *more* than three items, as long as each count is supported by three different and distinct items. The "or more" language affirms the prosecutorial discretion rather than removes it, by allowing the prosecutor to charge nine different

apparently chose to bring only one count under § 2252(a)(4)(B), even where, in one instance, the possession charge involved ten items. *See United States v. Burian*, 19 F.3d 188, 189-90 (5th Cir. 1994) (defendant was in possession of ten video tapes received through the mails). If the prosecution has the discretion to bring a single count even where the facts would permit several counts, these cases do not tell us very much. In the present case, the Government apparently believed, mistakenly in my opinion, that it needed to rely on a jurisdictional distinction in order to bring more than one count.

[4] The legislative history contains no reference whatsoever to the language and purpose of § 2252(a)(4)(B). If Congress intended to remove prosecutorial discretion under this particular section of the statute, one would expect to find some reference to this limitation.

[12] [4] *Compare* 18 U.S.C. § 2252(a)(1) *and* § 2252(a)(2) *with* § 2252(a)(4)(B).

-20-

items, for example, as one count or as three.[13]  Accordingly, I do not believe that the "three or more" language indicates that Congress intended to eliminate the prosecutor's discretion to bring one or several counts under this particular provision of the statute.  Counts 3 and 4 should be held sufficient not because they assert different jurisdictional grounds, but because they are supported by at least three separate and distinct items.  I would therefore affirm as to both counts.

---

[13]     Similarly, Congress would not have used the language "each three" because this might be read to remove prosecutorial discretion, requiring prosecutors to bring a separate count for each group of three items discovered in the defendant's possession.