

# NUMBER 13-16-00033-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHRISTINA L. McQUADE,                                             Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the County Court at Law No. 2 of McLennan County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides Memorandum Opinion by Justice Rodriguez

Appellant Christina L. McQuade appeals the denial of her motion to suppress the results of a blood draw, which was taken in the McLennan County Jail. After the trial court denied her motion to suppress, McQuade pleaded guilty to misdemeanor driving while intoxicated and received community supervision. *See* TEX. PENAL CODE ANN. §

49.04 (West, Westlaw through 2015 R.S.).   By one issue on appeal, McQuade contends that because her blood was drawn at the McLennan County Jail rather than at the location specified in the search warrant—a hospital in McLennan County—the blood draw violated her Fourth Amendment right against unreasonable searches.   We affirm.[1]

## I.  BACKGROUND

Prior to trial, the parties stipulated to the following events.   On January 1, 2014, Trooper Andy Stephens of the Texas Department of Public Safety executed a traffic stop when he observed McQuade driving above the speed limit.   Stephens performed field sobriety testing, and based on its positive results, he ultimately arrested McQuade on suspicion of driving while intoxicated.

McQuade was taken to the McLennan County Jail, where Stephens requested that she submit a breath specimen for examination.   McQuade refused.   Stephens then drew up an affidavit in pursuit of a search warrant.   A magistrate judge issued a search warrant as well as an order of assistance, indicating that McQuade was to be transported to a hospital in McLennan County for a mandatory blood draw by medical personnel.   A sample of McQuade's blood was instead drawn by a licensed vocational nurse at the McLennan County Jail.

McQuade was subsequently charged by information with the offense of driving while intoxicated.   Before trial, she moved to suppress the blood test results.   The trial court denied her motion and also entered findings of fact and conclusions of law, which

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a transfer order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).   Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own.   *See* TEX. R. APP. P. 41.3.

aligned with the parties' stipulated version of events. McQuade pleaded guilty to driving while intoxicated, subject to her right to appeal the denial of her motion to suppress, which we now consider.

## II. DISCUSSION

On appeal, McQuade argues that the blood draw in question violated her right against unreasonable search and seizure. The warrant, she noted, provided for her blood to be drawn at a local hospital. Law enforcement instead arranged for the blood draw to be performed by a nurse at the McLennan County Jail. McQuade argues that this deviation from the terms of the search warrant violated her Fourth Amendment rights and required that the results of the blood draw be suppressed as the product of an illegal search.

### A.    Standard of Review and Applicable Law

When the trial court makes express findings of historical fact in a suppression hearing, we afford almost total deference to those findings as long as they are supported by the record. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). We apply the same standard when reviewing the trial judge's application of law to questions of fact when resolution of those questions depends on an assessment of credibility and demeanor. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We apply a de novo standard of review to pure questions of law and to mixed questions of law and fact that do not depend on the evaluation of credibility and demeanor. *Id.* Whether the facts of the case, once determined, give rise to a reasonable expectation of privacy is a question of law to be reviewed de novo. *State v. Hardy*, 963 S.W.2d 516, 523 (Tex.

3

Crim. App. 1997) (en banc).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The overriding purpose of the Fourth Amendment is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (en banc); *see Schmerber v. California*, 384 U.S. 757, 767 (1966). A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is intruded upon. *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). Blood draws "plainly constitute searches of 'persons' . . . within the meaning of" the Fourth Amendment. *Schmerber*, 384 U.S. at 767. A blood draw is generally reasonable under relevant Fourth Amendment standards if: (1) the police had justification in requiring the suspect to submit to a blood test, and (2) the police employed reasonable means and reasonable procedures in taking the suspect's blood. *State v. Johnston*, 336 S.W.3d 649, 658 (Tex. Crim. App. 2011). "[T]he reasonableness of the manner in which a DWI suspect's blood is drawn should be assayed on an objective, case-by-case basis in light of the totality of the circumstances surrounding the draw." *Id.* at 661. Each suspect bears the burden of showing that a venipuncture blood draw is not a reasonable means to obtain a blood alcohol level assessment as to him or her, individually. *Id.* at 660.

If an accused has a legitimate expectation of privacy in the place invaded, she also

has standing to challenge the admission of evidence obtained by government intrusion into that place.   *Villarreal*, 935 S.W.2d at 138.   The defendant who challenges such a search has the burden of proving facts demonstrating a legitimate expectation of privacy. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013);  *Villarreal*, 935 S.W.2d at 138.   To carry this burden, the accused must normally prove that she had a subjective expectation of privacy in the place invaded and that society was prepared to recognize her expectation as objectively reasonable.   *Betts*, 397 S.W.3d at 203.

The Fourth Amendment also prohibits issuance of "general warrants" which allow officials to burrow through a person's possessions looking for any evidence of a crime. *U.S. v. Kimbrough*, 69 F.3d 723, 727 (5th Cir. 1995); *see U.S. v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998).   Where an officer blatantly disregards the particular language of a search warrant and transforms an otherwise valid search into a general one, suppression of all evidence seized during the search may be required.   *Kimbrough*, 69 F.3d at 728; *U.S. v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988); *U.S. v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978).   "The execution of a search warrant must be one directed in good faith toward the objects specified in the warrant."   *Kimbrough*, 69 F.3d at 728; *Gurleski v. U.S.*, 405 F.2d 253, 258 (5th Cir. 1968).

## B.    Application

McQuade asserts that because law enforcement performed the blood draw in a place other than that which was described in the search warrant, suppression must follow. McQuade supports this argument with citations to several different branches of Fourth Amendment jurisprudence.

First, McQuade cites multiple cases dealing with the Fourth Amendment's particularity requirement—i.e., that the Fourth Amendment prohibits the issuance of general warrants which allow officials to burrow through a person's possessions looking for any evidence of a crime. *Kimbrough*, 69 F.3d at 727. However, McQuade does not argue that there was any lack of particularity in the warrant, much less any deficiency which would render the warrant constitutionally infirm. *See, e.g.*, *U.S. v. Bonner*, 808 F.2d 864, 866 (1st Cir. 1986) ("The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." (internal quotations omitted)). In our assessment, the warrant does not suffer for clear detail in any way, describing the person to be seized, the single, sanguinary item to be searched out within her, and the place to conduct this process. *See id.* Nor did the execution of the warrant "transform an otherwise valid search into a general one," such as by proceeding to McQuade's home to search for traces of any other crimes she could have conceivably committed. *See Kimbrough*, 69 F.3d at 728; *Medlin*, 842 F.2d at 1199.

McQuade next challenges the reasonableness of the blood draw. She does not challenge the first prong of the Fourth Amendment standards for blood draws—whether "the police had justification"—such as by challenging the issuance of the search warrant or the probable cause which supported it. *See Johnston*, 336 S.W.3d at 658. Rather, McQuade challenges the second prong, which concerns whether the police used "reasonable means and reasonable procedures" in taking the blood test. *See id.*

6

Ordinarily this analysis contains two distinct questions: "first, to resolve the reasonableness of the means employed, it must be determined whether the test chosen was reasonable; and second, to resolve the reasonableness of the procedures employed, it must be determined whether the test was performed in a reasonable manner." *Id.* (internal quotations omitted); *see also Winston v. Lee*, 470 U.S. 753, 760–62 (1985). Neither of these questions relate to the problem identified by McQuade. The "test chosen" question normally relates to whether "grounds of fear, concern for health, or religious scruple" reasonably require the police to use some other means of testing. *See Schmerber*, 384 U.S. at 771. There is no indication that McQuade gave officers any personal reason why a blood draw was an inappropriate "test chosen." *See id.* As for "reasonable manner," this question normally relates to whether the test was conducted according to "accepted medical practices," being performed in a reasonably sanitary environment by reasonably qualified personnel. *See Schmerber*, 384 U.S. at 771–72; *Johnston*, 336 S.W.3d at 658–59. It is undisputed that the search was conducted by licensed medical personnel in a clean environment, and McQuade points to no other evidence which suggests that the procedure "invite[d] an unjustified element of personal risk of infection or pain." *See Johnston*, 336 S.W.3d at 663. Based on the totality of the circumstances, we cannot conclude that McQuade carried her burden to show that her blood draw was not a reasonable means or procedure for obtaining blood analysis. *See id.* at 660–61.

Finally, McQuade challenges the place in which the search was conducted, on the ground that it contravened the search warrant's description of the place to be searched

for her blood.   Where "the scope of the search is contested because of the location where the items were seized . . . the officers must show that they were properly in the place where the item was found."   *Snider v. State*, 681 S.W.2d 60, 62–63 (Tex. Crim. App. 1984) (en banc).   McQuade concedes that Stephens, as the arresting officer, certainly had a right to be in the McLennan County Jail.   However, she contends that Stephens did not have a right to be in the McLennan County Jail to execute the search warrant.

The overriding function of Fourth Amendment law is to protect reasonable expectations of privacy.   *See Schmerber*, 384 U.S. at 767; *Villarreal*, 935 S.W.2d at 138. McQuade does not dispute that there was probable cause and a warrant which justified the search of her person, which the warrant described with particularity; she simply challenges the place in which that search was conducted.   In this sense, McQuade appears to presume that she had an expectation of privacy which attached to the jail or the hospital in particular, rather than to her person.   Her argument is comparable to one addressed in *Green v. State*.   275 S.W.2d 110, 111 (Tex. Crim. App. 1955).   There, a search warrant was issued upon probable cause to believe that the defendant possessed whiskey with intent to sell it in a dry county.   *Id.* at 110.   The warrant authorized the search of a used car lot in Cleburne, Texas, as well as "all automobiles, outhouses, garages, [curtilages] and [appurtenances] thereto."   *Id.*   Police were unable to open the locks on one car which was found at the location, and they took it to a local body shop for assistance opening the trunk.   *Id.*   When the trunk was opened, it revealed a satchel containing thirty-four neat half-pints of whiskey.   *Id.*   When the defendant protested that the search was not accomplished at the place described in the search warrant, the Texas

8

Court of Criminal Appeals responded, quite simply, "There can be no merit to appellant's claim that the search of the automobile was unauthorized because finally accomplished at the body shop some distance from the used car lot" described in the warrant. *Id.* at 111.

Here, similar to *Green*, a warrant provided authority to search a specific target under suspicion that it contained illicit alcohol: in *Green*, the trunk of the defendant's car; here, the veins of the defendant's body. *See id.* Similar to *Green*, McQuade has offered no cause to believe she had a more reasonable expectation of privacy in the place described in the warrant—the hospital where the warrant expressly allowed for her to be searched[2]—than the place where the search was ultimately conducted—the McLennan County Jail.[3] *See id.*; *Hardy*, 963 S.W.2d at 523. She presented no evidence, for instance, suggesting that she had a property or possessory interest in either place, that she had previously taken precautions to guard her privacy in either place, or that she had made private use of either facility. *See Betts*, 397 S.W.3d at 203–04; *U.S. v. Carhee*, 27 F.3d 1493, 1498 (10th Cir. 1994) (rejecting a challenge to the search of a particularly described briefcase in one place rather than the place named in the search warrant, reasoning that the search was not conducted in a place such as the defendant's home,

---

[2] *See Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002) (en banc) (upholding blood draw at hospital conducted under a valid warrant); *cf. State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) (en banc) (finding no reasonable expectation of privacy in blood-alcohol analysis taken by hospital personnel solely for medical purposes after a traffic accident).

[3] *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (observing that the "essential goals" of "maintaining institutional security and preserving internal order" in jail facilities may require limitation of the constitutional rights of pretrial detainees); *U.S. v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002) (finding limited expectations of privacy in a jail booking area); *see also U.S. v. Harrelson*, 754 F.2d 1153, 1169 (5th Cir. 1985) (upholding admission of taped conversations between husband and wife during jail visit because husband and wife had no reasonable expectation of privacy as they spoke in jail).

where the defendant could claim a greater expectation of privacy than that which attached to the briefcase itself); *Bailey v. State*, No. 03-13-00566-CR, 2014 WL 3893069, at *2 (Tex. App.—Austin Aug. 8, 2014, no pet.) (mem. op., not designated for publication) (finding "nothing unreasonable" where a blood draw was directed to be performed at the Lampasas County Jail, but was instead performed at a hospital).[4]

McQuade appears to concede that the terms of the warrant allowed for her to be searched, but argues that the warrant made it impermissible for her to be searched in the jail.  We disagree.  It would be strange indeed for a search warrant to *create* new privacy expectations in a given place, rather than serving a warrant's ordinary purpose:  allowing the State to infringe upon existing privacy expectations.  *See Beeman v. State*, 86 S.W.3d 613, 615–16 (Tex. Crim. App. 2002) (en banc).

In the absence of any particular privacy interest attached to the place of the search, there is no merit to McQuade's contention that searching her veins in one place resulted in a greater insult to the Fourth Amendment than searching them at another.  *See Snider*, 681 S.W.2d at 62–63; *Green*, 275 S.W.2d at 111.  Based on our de novo review, we conclude that the execution of the search warrant was "directed in good faith toward the

---

[4] Given that the warrant authorized law enforcement to search a *specifically described* person—McQuade—for the evidence that her veins *certainly* contained, this case does not fall within the "general rule that a search warrant does not give police license to seize personal property *not described* in the warrant on the ground that such property *might* contain items that the warrant does describe; it only allows police to search such property at the place where the warrant is being executed."  *See State v. Powell*, 306 S.W.3d 761, 766 (Tex. Crim. App. 2010) (some emphasis in original, other emphasis added).  Even if this general rule were applicable, there are exceptions to this rule in cases wherein "it will be quite reasonable for police to remove a container, such as a computer or a file cabinet containing voluminous documents, from the scene of the search so that opening it and examining it can be more readily accomplished elsewhere," which could also potentially support our conclusion.  *See id.* at 766 & n.10; *see also Bailey v. State*, No. 03-13-00566-CR, 2014 WL 3893069, at *2 n.9 (Tex. App.—Austin Aug. 8, 2014, no pet.) (mem. op., not designated for publication) (relying on *Powell* and the search-of-container cases cited therein to approve a blood draw at an alternate location).

objects specified in the warrant" and was not constitutionally deficient because of the place where it was conducted. *See Kimbrough*, 69 F.3d at 728; *Hardy*, 963 S.W.2d at 523. We overrule McQuade's sole issue on appeal.

### III. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of September, 2016.

11