# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2014

No. 11-41363

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RUBEN VARGAS-OCAMPO,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JOLLY, DAVIS, JONES, SMITH, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, and HIGGINSON, Circuit Judges.[*] [**]

EDITH H. JONES, Circuit Judge, joined by STEWART, Chief Judge, and JOLLY, DAVIS, SMITH, CLEMENT, OWEN, SOUTHWICK and HIGGINSON, Circuit Judges:

The court voted to rehear this case en banc on the question whether, when examining the sufficiency of evidence supporting a criminal conviction,

---

[*] Judge King, having taken senior status before the rehearing en banc, elected not to participate.

[**] Judge Dennis, Judge Prado, Judge Elrod, Judge Haynes and Judge Graves concur in the judgment only.

this court should no longer refer to the "equipoise rule."[1]   According to appellant, the "equipoise rule" states that the court "must reverse a conviction if the evidence construed in favor of the verdict 'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged.'" *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995) (citations omitted).[2]  A majority of the court now holds that the "equipoise rule" is not helpful in applying the Supreme Court's standard prescribed in *Jackson v. Virginia*, whereby reviewing courts must affirm a conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  443 U.S. 307, 319, 90 S. Ct. 2781, 2789 (1979) (emphasis in original).  We abandon use of the "equipoise rule" and affirm Vargas-Ocampo's conviction.

## 1. The "Equipoise Rule"

The *Jackson* standard, which has been repeatedly reaffirmed by the Supreme Court,[3] may be difficult to apply to specific cases but is theoretically straightforward.  In contrast, the "equipoise rule" is ambiguous.  At one level,

---

[1] The petition for rehearing en banc suggested that the panel decision violated this court's "rule of orderliness" because it rejected binding prior circuit precedent.  Of course, a panel may determine that prior Fifth Circuit precedent is no longer binding because of inconsistency with Supreme Court decisions.  *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court.").  Any such issue is mooted by the vote for rehearing en banc, which vacated the panel decision.

[2] *See also United States v. Ortega-Reyna*, 148 F.3d 540, 543 (5th Cir. 1998) (interpreting the "equipoise rule" to hold that "[w]hen the evidence is essentially in balance, a reasonable jury must necessarily entertain a reasonable doubt").  Other cases citing this "rule" in our circuit include, *e.g., United States v. Penaloza-Duarte*, 473 F.3d 575, 580-81 (5th Cir. 2006); *United States v. Reveles*, 190 F.3d 678, 686 (5th Cir. 1999); *United States v. Stewart*, 145 F.3d 273, 277-80 (5th Cir. 1998).

[3] *See, e.g., Coleman v. Johnson*, ___ U.S. ___, 132 S. Ct. 2060 (2012); *Cavazos v. Smith*, __ U.S.___, 132 S. Ct. 2 (2011); *McDaniel v. Brown*, 558 U.S. 120, 130 S. Ct. 665 (2010).

whether it applies only to cases undergirded by circumstantial evidence, as opposed to direct or testimonial evidence, is not entirely clear. Moreover, no court opinion has explained how a court determines that evidence, even when viewed most favorably to the prosecution, is "in equipoise." Is it a matter of counting inferences or of determining qualitatively whether inferences equally support a theory of guilt or innocence?

In any event, when appellate courts are authorized to review verdicts of conviction for evidentiary "equipoise," they must do so on a cold appellate record without the benefit of the dramatic insights gained from watching the trial. The potential to usurp the jury's function in such circumstances is inescapable. *Jackson*'s "deferential standard" of review, however, "does not permit the type of fine-grained factual parsing" necessary to determine that the evidence presented to the factfinder was in "equipoise." *Compare Coleman v. Johnson*, __ U.S. ___, 132 S. Ct. 2060, 2064 (2012). *Jackson* also "unambiguously instructs that a reviewing court, 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, __ U.S.___, 132 S. Ct. 2, 6 (2011) (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2781). This court's decisions citing the "equipoise rule" have done little to resolve its inherent definitional problems and its tension, in practical if not theoretical terms, with the *Jackson* standard.

In abandoning use of the "equipoise rule" in this circuit, we do not render the *Jackson* standard toothless. On the contrary, courts remain empowered to consider, for instance, whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime. *See United States v. Nevils*,

598 F.3d 1158, 1167 (9th Cir. 2010) (en banc).  We reject no other formulations conscientiously applying the *Jackson* standard except the "equipoise rule."

### 2. The Conspiracy Conviction

Having done that, we turn to the appellant's challenge to his conviction for conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§846, 841(a)(1) and (b)(1)(B).[4]  The case was tried to a jury and the issue of evidentiary sufficiency was preserved in the trial court.

About 5 p.m. on July 12, 2011, United States Customs and Border Protection Service ("CBP") Agent Stewart Goodrich was patrolling the Rio Grande Valley by helicopter when he observed a pickup truck leaving the Rio Grande River, headed north, and two rafts moving south across the river toward Mexico.  Agent Goodrich could see that the rafts were occupied.

Agent Goodrich dropped to an altitude between 150 and 200 feet and began following the truck.  Agents Goodrich and Martinez-Baco could see that the truck's bed liner was too small and that there was about a six-inch gap between the walls of the truck bed and the liner.  The agents could see what they believed to be packages of narcotics in the space in between.  As Agent Goodrich circled the helicopter to the front of the truck, he saw more packages in the passenger seat and that the driver appeared to be talking on a cell phone.

In the meantime, the agents had contacted CBP ground units.  Agent Maibaum was on patrol in a ground unit.  Shortly before receiving the call, Agent Maibaum had observed two men sitting in vehicles approximately one and a half miles apart.  The two men remained at their respective locations and used their push-to-talk radios each time Agent Maibaum passed them in

---

[4] Vargas-Ocampo was also convicted of possession with intent to deliver a controlled substance.  He received concurrent 78-month sentences of imprisonment.  On appeal, he raised one additional issue challenging the court's aiding and abetting instruction to the jury, but we agree with the panel decision that the district court did not abuse its discretion in this regard.

his vehicle. He believed they were acting as scouts for drug smugglers and was making plans to investigate when he received the call from the helicopter agents.[5]

Agent Maibaum drove down a dirt road toward the location indicated by the helicopter agents (an area notorious for drug smuggling) and saw Vargas-Ocampo's truck. Agent Maibaum began pursuing the truck and pulled to within 10-15 feet of it. The truck began circling into an open field. Agent Maibaum could see packages bouncing in the truck bed. Vargas-Ocampo drove the truck approximately another one-eighth of a mile before stopping by a fence. Vargas-Ocampo jumped the barbed-wire fence, ran through some thick brush, and disappeared. Agent Maibaum pursued Vargas-Ocampo on foot but fell while crossing the barbed-wire fence and briefly lost sight of his quarry. When the helicopter agents informed Agent Maibaum that Vargas-Ocampo had ducked into a nearby garage, Agent Maibaum found him there. Vargas-Ocampo was holding a push-to-talk radio and a cell phone. Vargas-Ocampo's phones rang many times after he was apprehended.

The agents retrieved from the truck 84 packages containing approximately 430 kilograms of marijuana. The registered owner of the truck was Maria Alvarez.

This court reviews the record to determine whether, considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. The essential elements of a drug conspiracy are (1) an agreement by two or more persons to violate the narcotics laws; (2) a defendant's knowledge of the agreement; and (3) his voluntary participation in

---

[5] The record does not show what happened to the two men Agent Maibaum observed.

the agreement. *United States v. Misher*, 99 F.3d 664, 667 (5th Cir. 1996). The government relies particularly on the raft's location  in the river almost exactly when Vargas-Ocampo's truck appeared, the large amount of marijuana found in his truck, the proximity and actions of surveillance "scouts" for the drug transfer, and Vargas-Ocampo's use of a push-to-talk radio and numerous calls received on his phones as events transpired. Appellant argues that for each incriminating inference that could be drawn from the proof tending toward conspiracy, there was a benign explanation. Under *Jackson*, the jury was entitled to weigh this circumstantial evidence, drawing inferences for or against Vargas-Ocampo's knowing and voluntary participation in a conspiracy with others. As this court has stated, "[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Rodriguez-Mireles*, 896 F.2d 890, 892 (5th Cir. 1990). The jury could have rationally concluded that this appellant participated as a link in the chain of importation and distribution. The evidence was more than sufficient to convict Vargas-Ocampo.

The judgment of conviction is **AFFIRMED**, and this court abandons any reliance on the "equipoise rule."