ACCEPTED
06-15-00061-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/20/2015 4:34:27 PM
DEBBIE AUTREY
CLERK

**NO. 06-15-00061-CR**

_____

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
8/20/2015 4:34:27 PM
DEBBIE AUTREY
Clerk

IN THE COURT OF APPEALS FOR THE SIXTH DISTRICT, TEXARKANA, TEXAS

_____

**BOBBY EUGENE CLARK, JR.**
*Appellant,*
v.
**THE STATE OF TEXAS**
*Appellee.*

_____

On Appeal from Cause No. 42863-B
In the 124th Judicial District Court of Gregg County, Texas
Honorable Alfonso Charles, Presiding Judge

_____

**APPELLANT'S <u>ANDERS</u> BRIEF**

_____

Jonathan Wharton
SNOW E. BUSH, JR., P.C.
Texas State Bar No. 24075764
420 N. Center Street
Longview, TX 75601
Tel. (903) 753-7006
Fax (903) 753-7278
jonathanwharton1@sbcglobal.net
**ATTORNEY FOR APPELLANT**
**BOBBY EUGENE CLARK, JR.**

August 20, 2015

**IDENTITY OF PARTIES AND COUNSEL**

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellant lists the following parties affected by this appeal, and their respective appellate and trial counsel:

Appellant: Bobby Eugene Clark, Jr.

Jonathan Wharton
Snow E. Bush, Jr., P.C.
420 N. Center Street
Longview, TX 75601
Tel. 903.753.7006
Fax 903.753.7278
jonathanwharton1@sbcglobal.net
**Court-Appointed Appellate Counsel for Bobby Eugene Clark, Jr.**

Zachary W. Davis
P.O. Box 2042
Tyler, TX 75710
Tel. 903.539.5576
**Appointed Trial Counsel for Bobby Eugene Clark, Jr.**

Appellee: The State of Texas

Zan Brown
Gregg County District Attorney's Office
101 East Methvin Street, Suite 333
Longview, TX 75601-7252
Tel. 903.236.8440
Fax 903.236.8490
**Appellate Counsel for the State of Texas**

Madison Hood
Gregg County District Attorney's Office

1

101 East Methvin Street, Suite 333
Longview, TX 75601-7252
Tel. 903.236.8440
Fax 903.236.8490
**Trial Counsel for the State of Texas**

# TABLE OF CONTENTS

**IDENTITY OF PARTIES AND COUNSEL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**INDEX OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**NO REQUEST FOR ORAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**ISSUES PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**SUMMARY OF THE ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**PRAYER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# INDEX OF AUTHORITIES

## STATUTES

Tex. Code of Crim. Proc., Art. 4.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Pen. Code § 21.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Penal Code § 12.33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Code of Crim. Proc., Art. 38.072 . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12, 13

## CASES

Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . 17 , 18

Ethington v. State, 819 S.W.2d 854 (Tex. Crim. App. 1991) . . . . . . . . . . . . . . . 13

Hernandez v. State, 04-09-00584-CR (Tex. App.—San Antonio 2010, no pet.) (mem. op.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

High v. State, 573 S.W.2d 807 (Tex. Crim. App. 1978). . . . . . . . . . . . . . . . . . . . 10

Jackson v. Virginia, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Kelly v. State, 436 S.W.3d 313 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . . . 11

Long v. State, 800 S.W.2d 545 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . 12

Schlup v. Delo, 513 U.S. 298 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sledge v. State, 953 S.W.2d 253 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . 15

Teal v. State, 230 S.W.3d 172 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . 10

U.S. v. Vargas-Ocampo, 747 F.3d 299 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . 15, 17

## STATEMENT OF THE CASE

Bobby Eugene Clark, Jr. pled not guilty to indecency with a child and tried the case to the court. 3 RR 7. The court convicted him and sentenced him to seven years in the penitentiary. 3 RR 121; 4 RR 13.

## NO REQUEST FOR ORAL ARGUMENT

Because there are no meaningful issues in the appeal, the court's decisional process would not benefit from oral argument.

## ISSUES PRESENTED

1.     Are there any arguably reversible errors in the record?

## STATEMENT OF FACTS

Bobby Eugene Clark, Jr. was indicted on an accusation that on September 29, 2012, he engaged in sexual contact with Jane Doe (who will be referred to as "the child") by touching her genitals with the intent to arouse or gratify his sexual desire. CR 4. After admonishments, he waived his right to a jury trial. CR 20; 2 RR 4-7. The defendant pled "not guilty" and proceeded to a bench trial. 3 RR 8.

Mr. Clark is the child's great-uncle, the brother of her grandmother. 3 RR 13. The child's accusation was, "Like, he put me on the couch on my side one time and touched me in the front and the back. And he's put me on his shoulders one time, touched me in the back and the front. And one time he had this little red Hoveround

5

[a motorized wheelchair] and put me in the middle, and he made me sit there, and I didn't really want to." 3 RR 15-16. She was nine years old at the time. 3 RR 16.

The child did not like Mr. Clark to begin with: he was disrespectful and rude. 3 RR 23. She was uncomfortable around him. 3 RR 23. When she rode around in his lap on the Hoveround, he chased after a chicken, but he did not touch her inappropriately. 3 RR 24.

The prosecution presented one specific sexual allegation. According to the prosecution, the event took place at the child's grandmother's house. 3 RR 16. Mr. Clark was staying there at some points in September of 2012. 3 RR 61. The child and her sister would also stay there on the weekends. 3 RR 61; 3 RR 16. According to the child, Mr. Clark "put her on his side with him." 3 RR 16-17. He then allegedly patted her on her private parts. 3 RR 17. The child's grandmother and her sister were in the house at the time; the child's sister was in the same room. 3 RR 17.

The child's sister testified that the night of the alleged touching, her grandmother and Mr. Clark were sleeping in the back bedrooms. 3 RR 35-36. At some point in the night the child came to her seeming scared and asked to sleep with her. 3 RR 38. The child's sister saw the child on the couch, but she did not see Mr. Clark on the couch. 3 RR 40-41. She never saw any sexual touching, but Mr. Clark did make her uncomfortable: "He just made us feel uncomfortable, like I felt like he

was watching us." 3 RR 34. "He—he was really touchy with [the child]. He was always wanting her to climb on him and hug on him and stuff, like she was a little kid." 3 RR 34.

The child's grandmother, Barbara Tidwell, testified that she saw something that made her uncomfortable in the early part of September: "Little Bobby was laying on the couch and [the child] was standing at the end of the couch, and he just kind of pulled her up on him, on his side. . . . it just made me uncomfortable. And I—I said, 'Pony, come on, let's go outside.'" 3 RR 61-62. Mr. Clark was laying on his side and the child was laying on her side on top of him. 3 RR 66. This event happened during the day, and Ms. Tidwell was not sure whether it was the same incident the child was alleging happened. 3 RR 62. Ms. Tidwell saw nothing else between Mr. Clark and the child that caused her any concern. 3 RR 62-63. Mr. Clark never held the child or picked her up. 3 RR 64.

The child's father testified that he heard the child make an outcry. Per the State's Article 38.072 notice, the outcry was as follows: "Jane Doe 07192003 told Brian Splawn that defendant touched Jane Doe inappropriately and that defendant forced Jane Doe to sit on top of defendant facing defendant and that defendant forced Jane Doe in an up and down motion while she sat on top of defendant." CR 13. At trial, he said that she came to him and said, "Uncle Bobby raped me." 3 RR 45. "[S]he

7

said that he had called her over to—called her over to the couch or something and that he had held her tight; and that she kept trying to turn over, and that he kept turning her back over." 3 RR 45.

> [S]pecifically what she said was, once I got her calmed down to where she could—she could talk clearly, she said that her older sister, I guess, was sitting or—or in another area of the living room or something, and Bobby was making her feel real uncomfortable. He had —I guess he had already made an attempt or something—or had—had grabbed her in an inappropriate way where she didn't feel comfortable. She went to her older sister, asked if she could sleep with her. And being a big sister she said no, because, you know, whatever. And so [the child's sister] got up and went to bed and left her alone in the living room with Bobby.

3 RR 46. The child's sister did not leave the living room, as she slept there in a recliner. 3 RR 40.

The indictment stating that the touching occurred on September 29, 2012, was based on the report the child's father made to the police on October 17, 2012, the morning after he heard the outcry. 3 RR 55-56; 3 RR 47-48. The defense proved that no touching could possibly have happened on September 29 because the defendant was in a hospital that entire day, as shown by medical records and testimony. Defendant's Exhibit 1 at 1-2 (medical records); 3 RR 66 (testimony from child's grandmother that the defendant never returned to the house after September 27); 3 RR 98 (testimony from defendant's daughter).

8

At trial, the child's father became certain that the incident occurred on September 22, 2012. 3 RR 54 ("Q: But you do know specifically now today in court that it was the 22nd that this occurred; is that what you're saying? A. Yeah, that's exactly right. Yes, it is."). It turned out that Mr. Clark was not at the house on that date, either; in fact, he was at his daughter's house. 3 RR 97 (testimony from defendant's daughter); 3 RR 81 (testimony from defendant); 3 RR 68 (testimony from child's grandmother). The 22nd was memorable because Mr. Clark had left an airplane at the child's house on Thursday, it was broken by the kids on Saturday, and he found out about it when he arrived on Sunday. 3 RR 81. The defense also ruled out the previous Saturday, the 15th, as he was at his daughter's house then too. 3 RR 96-97 (testimony from defendant's daughter); 3 RR 68 (testimony from child's grandmother); 3 RR 80 (testimony from defendant).

The court convicted Mr. Clark and sentenced him to seven years in the penitentiary. 3 RR 121; 4 RR 13.

## SUMMARY OF THE ARGUMENT

This Anders brief is accompanied by a motion to withdraw and a motion for appointment of counsel to apply for a writ of habeas corpus. Because there is legally sufficient evidence, there are no arguable grounds for reversal based on this record.

## ARGUMENT

### I.      Possible Points of Error

#### A.      *Introduction*

This appeal is from a bench trial and the trial court sentenced the defendant within the punishment range for the crime, so there is nothing to argue. The case was tried by a district court, so it had jurisdiction. Tex. Code of Crim. Proc., Art. 4.05. The indictment alleged a crime. CR 4 (alleging indecency with a child); Teal v. State, 230 S.W.3d 172, 179 (Tex. Crim. App. 2007) (indictment that charges (1) a person (2) with a crime is sufficient to confer jurisdiction). The punishment of seven years is within the punishment range. Tex. Pen. Code § 21.11(d) (defining the crime as alleged a second degree felony); Tex. Penal Code § 12.33 (statutory establishment of punishment for second degree felony as imprisonment for a term between two and twenty years).

As required by High v. State, 573 S.W.2d 807, 811 (Tex. Crim. App. 1978), counsel will "refer to anything in the record that might arguably support the appeal and make ready references to the record and legal authorities." The undersigned counsel has (1) informed Appellant of the motion to withdraw and attendant Anders brief, (2) provided Appellant with copies of the brief and the motions to withdraw and be appointed as counsel for applying for a writ of habeas corpus

while notifying him of his various *pro se* rights, and (3) supplied him with a form motion for *pro se* access to the appellate record (and the mailing address for the court of appeals), to be filed within ten days, so that he may timely effectuate that right, if he so chooses. Kelly v. State, 436 S.W.3d 313, 320 (Tex. Crim. App. 2014).

### B. Possible Points of Error

#### 1. Failure to Exclude Hearsay

The State introduced outcry statements that were allegedly made by the complainant. 3 RR 45. The State gave two notices to the defense under Article 38.072 of the Texas Code of Criminal Procedure that it intended to use hearsay statements of the child. One was through her father, Brian Splawn, summarized as follows: "Jane Doe 07192003 told Brian Splawn that defendant touched Jane Doe inappropriately and that defendant forced Jane Doe to sit on top of defendant facing defendant and that defendant forced Jane Doe in an up and down motion while she sat on top of defendant." CR 13. The other was through Kelli Faussett, who did not testify at trial and was never mentioned. CR 11.

After giving the notice, the State did not follow the rest of the procedure required for introduction of this hearsay statement. Specifically, in order to be admissible, the trial court must find that the statement "is reliable based on the

11

time, content, and circumstances of the statement." Tex. Code of Crim. Pro., Art. 38.072(b)(2); Long v. State, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990). As discussed below in Part I.B.3, the outcry statement provided by Brian Splawn had significant reliability problems. First, the defendant was admitted to a hospital the date of the alleged touching and therefore could not have been present at the child's house when Mr. Splawn claimed it took place. Second, Mr. Splawn's description of the event did not match the child's: according to her, when she rode on the Hoveround (a motorized wheelchair) with Mr. Clark, he did not touch her and she just sat on his lap. 3 RR 24.

At trial, Brian Splawn testified that the child said, "Uncle Bobby raped me." 3 RR 45. "[S]he said that he had called her over to—called her over to the couch or something and that he had held her tight; and that she kept trying to turn over, and that he kept turning her back over." 3 RR 45.

> [S]pecifically what she said was, once I got her calmed down to where she could—she could talk clearly, she said that her older sister, I guess, was sitting or—or in another area of the living room or something, and Bobby was making her feel real uncomfortable. He had—I guess he had already made an attempt or something—or had—had grabbed her in an inappropriate way where she didn't feel comfortable. She went to her older sister, asked if she could sleep with her. And being a big sister she said no, because, you know, whatever. And so Faith got up and went to bed and left her alone in the living room with Bobby.

12

3 RR 46. No mention was made of his claim that she sat on the defendant while the defendant made her perform an up-and-down motion as stated in the notice. The bulk of his testimony at trial was consistent with the child's earlier testimony that day, in which she said nothing about straddling the defendant with an "up-and-down motion" or a "rape," but instead claimed to have been touched through her clothing. 3 RR 17-18.

Nevertheless, in a bench trial, Article 38.072 does not require a separate hearing on the reliability of the outcry statement. Hernandez v. State, 04-09-00584-CR at *5-6 (Tex. App.—San Antonio 2010, no pet.) (mem. op.). Further, no objection was made by defense counsel. *See* 3 RR 45-47. Therefore, any hearsay objection was waived. Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

### 2. *Variance Between Date in Indictment and Proof at Trial*

The indictment alleged that Mr. Clark molested the child on or about September 29, 2012. CR 4. That date was based on an report by the child's father to the police on October 17, 2012. 3 RR 55-56. The defense proved that no touching could possibly have happened on September 29 because the defendant was in a hospital that entire day, as shown by medical records and testimony. Defendant's Exhibit 1 at 1-2 (medical records); 3 RR 66 (testimony from child's

grandmother that the defendant never returned to the house after September 27); 3 RR 98 (testimony from defendant's daughter).

Mr. Splawn then became certain that the incident occurred on September 22, 2012. 3 RR 54 ("Q: But you do know specifically now today in court that it was the 22nd that this occurred; is that what you're saying? A. Yeah, that's exactly right. Yes, it is."). It turned out that Mr. Clark was not at the house on that date, either; in fact, he was at his daughter's house. 3 RR 97 (testimony from defendant's daughter); 3 RR 81 (testimony from defendant); 3 RR 68 (testimony from child's grandmother). The 22nd was memorable because Mr. Clark had left an airplane at the child's house on Thursday, broken on Saturday, and he found out about it when he arrived on Sunday. 3 RR 81. The defense also ruled out the previous Saturday, the 15th, as he was at his daughter's house then too. 3 RR 96-97 (testimony from defendant's daughter); 3 RR 68 (testimony from child's grandmother); 3 RR 80 (testimony from defendant).

The prosecution ultimately abandoned its attempts to prove a specific date, opting instead to argue that the offense happened sometime in the month of September: "It could have been that weekend, it could have been a weekend before. It happened in September before the Indictment—before the date presented the Indictment—in the Indictment, and—and we're there." 3 RR 115.

The prosecution is correct that it reached the goal of legal sufficiency for a conviction. "It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). That each specific date offered by the witnesses was countered by evidence from the defense is immaterial. The witnesses are free to change their testimony, and the finder of fact is free to believe them anyway. There is no requirement that a conviction be based on consistent evidence, as long as "after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." U.S. v. Vargas-Ocampo, 747 F.3d 299, 301 (5th Cir. 2014) (emphasis in original) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

### 3. *Actual Innocence*

There were significant problems with the case. The evidence in favor of conviction consisted almost entirely of accusations by the child. As discussed above in part I.B.2, the date of the alleged touching changed from weekend to weekend in September after the defense countered each specific date, slowly

15

evolving into a general "sometime in September" accusation by the prosecution. As discussed above in Part I.B.1, the allegation made in the outcry statement about an "up-and-down motion" on Mr. Clark's lap did not match the child's testimony at trial. The defendant denied touching her inappropriately. 3 RR 85-86. There was a complete lack of physical evidence, such as DNA, photographs, video, hair, fingerprints, semen, or a medical examination of the child, linking Mr. Clark to a crime. The other person in the room at the time of the alleged touching did not even see Mr. Clark in the room. 3 RR38-41. The only independent observations from anyone consisted of family members saying that Mr. Clark made them "uncomfortable." 3 RR34; 3 RR 62. The child's grandmother testified that "Little Bobby was laying on the couch and [the child] was standing at the end of the couch, and he just kind of pulled her up on him, on his side. . . . it just made me uncomfortable. And I—I said, 'Pony, come on, let's go outside.'" 3 RR 61-62. This happened sometime during the day in the early part of September. 3 RR 62. That testimony describes activity that is not a crime, it is consistent with the time frame that Mr. Clark was actually at the house, and it is remarkably similar to the child's accusation about being uncomfortable on a couch with Mr. Clark. All in all, it is certainly fair to say that some reasonable doubts could have crept into the fact-finder's mind.

But so long as the accusation is maintained through trial and there is no conclusive evidence, such as a videotape, proving beyond a reasonable doubt that the defendant did *not* commit the crime, an appellate court must affirm the conviction. *See* Brooks v. State, 323 S.W.3d 893, 906-07 (Tex. Crim. App. 2010) ("A hypothetical that illustrates a proper application of the Jackson v. Virginia legal-sufficiency standard is robbery-at-a-convenience-store case: 'The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on all the evidence the jury's finding of guilt is not a rational finding.'").

Later, with additional evidence, actual innocence may be demonstrated by a writ of habeas corpus if it is more likely than not that no reasonable juror would have convicted. Schlup v. Delo, 513 U.S. 298, 329 (1995). On direct appeal, the standard is whether "after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." U.S. v. Vargas-Ocampo, 747 F.3d 299, 301 (5th Cir. 2014) (emphasis in original) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Without conclusive, irrefutable

17

evidence, such as a video showing someone else committing the crime, the conviction stands. The finder of fact was free to disregard the problems with the case and believe the child and her father. Brooks, 323 S.W.3d at 899 ("[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony."). As succinctly stated by Justice Scalia, "It is age-old wisdom among mature, experienced legal thinkers that procedure matters most: how things should be done, as opposed to what should be done. And for judges the 'how' is fidelity to law. But it is a hard lesson to learn, and harder to follow." Antonin Scalia & Bryan A. Garner, Reading Law 348 (2012).

## PRAYER

The undersigned attorney prays that the court grant him leave to withdraw as the appellate attorney for Bobby Eugene Clark, Jr.

Respectfully submitted,

SNOW E. BUSH, JR., P.C.
420 N. Center Street
Longview, TX 75601
Tel. (903) 753-7006
Fax. (903) 753-7278
E-mail: jonathanwharton1@sbcglobal.net

18

By: /s/ Jonathan Wharton

JONATHAN WHARTON
STATE BAR NO. 24075764
ATTORNEY FOR APPELLANT,
BOBBY EUGENE CLARK, JR.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been delivered to Zan Brown, counsel for appellee, on this the 20th day of August, 2015.

/s/ Jonathan Wharton
JONATHAN WHARTON

## CERTIFICATE OF COMPLIANCE

I hereby certify that the Appellants Brief (as measured under Tex. R. App. P. 9.4(i)(1)) contains 3,372 words as counted by Microsoft WordPerfect on this the 20th day of August, 2015.

/s/ Jonathan Wharton
JONATHAN WHARTON