# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 25, 2021

Lyle W. Cayce
Clerk

No. 20-50438

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JASON LEE SARABIA,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CR-441-1

Before KING, DENNIS, and HO, *Circuit Judges*.

PER CURIAM:*

A jury convicted Jason Lee Sarabia of two counts of receiving and two counts of possessing child pornography. The district court sentenced Sarabia to 285 months of imprisonment and 20 years of supervised release on the receipt counts and imposed a $100 assessment on each of the four counts.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-50438

For the reasons that follow, we AFFIRM in part and DISMISS in part for lack of subject-matter jurisdiction.

## I.

At bottom, this criminal appeal challenges a pre-trial ruling, sufficiency of the evidence supporting convictions for receipt and possession of child pornography, multiplicity of the convictions, and the sentence imposed by the district court.

Following a jury trial, defendant-appellant Jason Lee Sarabia was convicted of two counts of receiving child pornography and two counts of possessing child pornography. But Sarabia's challenges on appeal begin with pre-trial proceedings. Namely, in the lead-up to trial, Sarabia had three different court-appointed lawyers before deciding to represent himself. Standby counsel was present throughout discovery and at trial. Additionally, six weeks before trial, Sarabia requested a ninth continuance of trial due to issues with his ability to review discovery material. The district court denied the motion but met with the parties weekly to ensure that Sarabia had access to the necessary materials. Sarabia challenges this ruling.

At trial, four witnesses testified: the FBI agent who downloaded child pornography from Sarabia's IP address, the expert who forensically examined Sarabia's phones (the "Samsung phone" and the "ZTE phone"), a police officer who rescued one of the victims depicted in child pornography found on one of Sarabia's phones, and a representative of Sarabia's internet-service provider. Much of the evidence adduced at trial focused on the images and videos of child pornography on Sarabia's phones, including thumbnail images, the names of files identified on his phones, and the type of file-sharing software he used. The evidence included information about the dates of the downloads of child pornography and the dates that the downloaded files were accessed, primarily by way of the forensic examination

of the phones. Based on this evidence, the jury convicted Sarabia of two counts of receipt and two counts of possession of child pornography, but hung on the distribution count, which the government moved to dismiss. On appeal, Sarabia challenges the sufficiency of the evidence supporting the receipt and possession convictions.

At sentencing, the district court imposed an enhancement for distribution of child pornography and declined to grant a reduction that is available when a defendant's conduct is limited to receipt of child pornography. The district court sentenced Sarabia to 285 months of imprisonment followed by a 20-year term of supervised release on the receipt counts. Although the district court did not impose any additional imprisonment or period of supervised release for the possession counts, it did impose a $100 special assessment on each of the four counts. As part of Sarabia's conditions of supervised release, he is not allowed to associate with children unsupervised. Regarding his sentence, on appeal, Sarabia challenges the distribution enhancement and denial of the reduction for receipt only. He also challenges the aforementioned condition of supervised release.

We address each of Sarabia's challenges in turn.

## II.

"Trial judges have broad discretion in deciding requests for continuances, and we review only for an abuse of that discretion resulting in serious prejudice." *United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009) (quoting *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007)). When reviewing a denial of a continuance, we consider the totality of the circumstances, including (1) "the amount of time available," (2) "the defendant's role in shortening the time needed," (3) "the likelihood of prejudice from denial," (4) "the availability of discovery from the prosecution," (5) "the complexity of the case," (6) "the adequacy of the

defense actually provided at trial," and (7) "the experience of the attorney with the accused." *Id.* And unless the denial of the continuance is arbitrary or unreasonable, we will "uphold the trial court's decision to deny the continuance." *Id.* (quoting *United States v. Hughey*, 147 F.3d 423, 431 (5th Cir. 1998)).

Here, considering the totality of the circumstances, the district court acted well within its broad discretion. To start, Sarabia had nearly a year and half between his arrest and trial to prepare for trial, and he was certainly involved in preparing his defense—including by advocating for different counsel—even before he opted to represent himself. *Cf. United States v. Hoenig*, 79 F. App'x 8, 9 (5th Cir. 2003) (accounting for the fact that a defendant who eventually proceeded pro se "had the benefit of counsel for over four months previously"). In other words, as the amount of time available to prepare his defense cannot be limited to the time from when Sarabia began representing himself, the subsequent logistical difficulties that he encountered in obtaining access to discovery materials do not support finding an abuse of discretion.

Further, Sarabia created the situation he now complains of by switching lawyers three times and then deciding to represent himself ten weeks before trial. Nor is this case particularly complex. *See Stalnaker*, 571 F.3d at 439 (listing complexity as a factor to consider); *cf. United States v. Lewis*, 476 F.3d 369, 375, 387 (5th Cir. 2007) (upholding a denial of a continuance in a drug-conspiracy case but noting that the "case was indeed complex: it involved ten defendants, even more witnesses, and voluminous discovery"). Finally, the district court's insistence on an expeditious trial, after granting several continuances and recognizing that further rescheduling would interfere with other scheduled trials, was a valid interest. *See United States v. Pollani*, 146 F.3d 269, 272 (5th Cir. 1998) (noting that the district

court had a "validly protected" "interest in maintaining its docket and keeping cases on schedule").

Therefore, considering the totality of the circumstances, the district court did not abuse its discretion in denying the request for a continuance. We turn next to Sarabia's arguments regarding the sufficiency of the evidence.

## III.

Although we review the sufficiency of the evidence supporting a conviction de novo, the review is "nevertheless highly deferential to the verdict." *United States v. De Nieto*, 922 F.3d 669, 677 (5th Cir. 2019) (quoting *United States v. Chapman*, 851 F.3d 363, 376 (5th Cir. 2017)). Indeed, we "must affirm a conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (emphasis in original)). Plainly put, "a defendant seeking reversal on the basis of insufficient evidence swims upstream." *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997).

Much of Sarabia's sufficiency-of-the-evidence argument on all counts boils down to his position that no rational juror could have found, beyond a reasonable doubt, that he *knew* that he either received or possessed child pornography.[1] But a rational jury could conclude just the opposite based on

---

[1] Sarabia also contends that the evidence does not support that he actually received any child pornography on or about the dates in the indictment or possessed any child pornography on the Samsung phone on or about the date alleged in the indictment. But this argument is unpersuasive because "an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, 'within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.'" *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011) (quoting *Russell v.*

the evidence adduced at trial. Below, we first discuss the sufficiency of the evidence as to the receipt counts before turning to the possession counts.

*1. A rational jury could conclude that Sarabia knowingly received child pornography in violation of 18 U.S.C. § 2252A(a)(2).*

The evidence is sufficient to sustain a conviction for knowingly receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2) if a rational juror could find beyond a reasonable doubt that the defendant (1) knowingly received (2) any child pornography (3) by using any means of interstate or foreign commerce or that has been transported in interstate or foreign commerce. A defendant knowingly receives child pornography if he "voluntarily and intentionally" receives any child pornography. *United States v. Payne*, 341 F.3d 393, 403 (5th Cir. 2003).

In this case, the jury heard evidence of a pattern of child pornography downloaded and accessed on both of Sarabia's phones. And we have previously held that jurors can infer knowledge from circumstantial evidence such as a pattern of receipt and possession of child pornography. *See Winkler*, 639 F.3d at 699; *United States v. Runyan*, 290 F.3d 223, 242–43 (5th Cir. 2002). Specifically, the jury heard that there were seventy-seven thumbnail images of child pornography on Sarabia's ZTE phone and over a thousand

---

*United States*, 429 F.2d 237, 238 (5th Cir. 1970)). And in light of the dates on the forensic reports, the evidence on this score is sufficient. Further still, this type of discrepancy is only an issue "when it affects the substantial rights of the defendant by failing to sufficiently notify him so that he can prepare his defense and will not be surprised at trial." *Id.* at 317 (quoting *United States v. Phillips*, 664 F.2d 971, 1036 (5th Cir. Unit B Dec. 28, 1981)). Critically, here, Sarabia does not argue that he lacked sufficient notice. To the extent that Sarabia also argues that the evidence was insufficient to show that he "received" child pornography from an outside source, this argument is similarly unavailing. Simply, because Sarabia's phones contained child-pornography images that did not originate with him, the existence of those images on his phones was "proof that the files were received." *United States v. Winkler*, 639 F.3d 692, 699 (5th Cir. 2011).

such images on his Samsung phone. The presence of the thumbnails also means that Sarabia opened the folders containing child pornography files. And relevant here, the thumbnail images were large and clear enough for Sarabia to see that the files represented child pornography. As such, a rational juror could conclude that the thumbnails proved beyond a reasonable doubt that Sarabia knew that what he was receiving was indeed child pornography. *See Winkler*, 639 F.3d at 693 (affirming a defendant's conviction for knowing receipt of child pornography and holding that images found in his temporary internet cache evidenced proof of receipt); *see also United States v. Pawlak*, 935 F.3d 337, 350–51 (5th Cir. 2019) (pointing to *Winkler*'s discussion of images in a temporary cache as evidence of knowing receipt in support of finding that thumbnails in a temporary cache similarly evidenced knowing receipt).

The thumbnails, however, were not the only evidence. Indeed, the jury also heard evidence regarding the names of videos that Sarabia viewed, and these files were labeled with explicit names indicating that they depicted young children involved in sexual conduct. And several of the file names appeared on both phones, indicating that Sarabia had viewed the file on one phone and then obtained it on the other phone and viewed it again. Against that backdrop, the jury could reasonably infer that once Sarabia viewed a child-pornography file on one phone and then obtained it and viewed an identically named file on the other phone, he knew he was receiving child pornography. *Cf. Payne*, 341 F.3d at 404 n.8 ("The jury was entitled to infer that Payne's past experiences downloading pictures of child pornography at some point enabled him to predict the content of child pornography images bearing suggestive labels.").

Additionally, the jury was similarly free to conclude that the downloads to Sarabia's phones supported that Sarabia knew he was receiving child pornography, as the software he used does not download files randomly.

And, the downloads matched a series of child-pornography images and videos. Relatedly, the fact that the FBI was able to download child pornography from Sarabia's IP address supports this same conclusion. This is so because the jury could rationally conclude that Sarabia was the source of the child pornography coming from that IP address since no one else used the ZTE phone. *Cf. United States v. Waguespack*, 935 F.3d 322, 331 (5th Cir. 2019) (finding that downloading child pornography from the peer-to-peer file sharing software associated with the defendant's IP address where the defendant was the sole user of the device supported the knowledge requirement). Finally, the jury could have concluded that Sarabia's efforts to conceal the contents of his phones evidenced knowing receipt. *See, e.g.*, *Winkler*, 639 F.3d at 699 (concluding that jurors can infer knowledge from circumstantial evidence such as a pattern of receipt and possession of child pornography). Namely, the ZTE phone was an active source of child pornography until the night before FBI agents searched his house.

To be sure, the jury also heard Sarabia's side of things; he suggested that the thumbnails were difficult to access so that he might have missed them, or not been aware that some thumbnails contained child pornography since the agents testified that there was no evidence of internet searches for express "child pornography terms." And to the extent that Sarabia argues that the file names are not evidence that he knew he was receiving child pornography because file names can be easily changed, the jury was aware of that fact, too. But, at bottom, the jury was free to reject this hypothesis of innocence. *See United States v. Evans*, 892 F.3d 692, 702 (5th Cir. 2018).

For the foregoing reasons, based on the evidence adduced at trial, a rational jury could conclude that Sarabia knowingly received child pornography in violation of 18 U.S.C. § 2252A(a)(2).

No. 20-50438

*2. A rational jury could conclude that Sarabia knowingly possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).*

Evidence is sufficient to sustain a conviction for knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) if a rational juror could find beyond a reasonable doubt that the defendant (1) knowingly (2) possessed (3) material containing an image of child pornography (4) that was transported in interstate or foreign commerce by any means. *United States v. Smith*, 739 F.3d 843, 845–46 (5th Cir. 2014).

As with the receipt counts, the evidence was similarly sufficient to show that Sarabia knowingly possessed child pornography. Plainly, the jury heard evidence that both phones contained child-pornography videos or images near the dates alleged in the indictment—that is, on or about November 30, 2017, on the ZTE phone and the Samsung phone. For example, a video was downloaded to the ZTE phone on October 24, 2017, and on November 4, 2017, and the FBI downloaded twelve sexually explicit images of a minor on November 24, 2017, from Sarabia's IP address associated with the Samsung phone.

Again, the jury also heard Sarabia's side of things, including that the Samsung phone was inoperable on the dates alleged in the indictment. Sarabia's theory is that he could not know that the Samsung phone contained child pornography on the dates alleged in the indictment because the phone was broken. But the date alleged in the indictment is not an essential element. *Girod*, 646 F.3d at 316–17. And in any event, the FBI was able to download images from that phone reasonably near the date alleged. Based on that evidence, the jury could have reasonably concluded that the phone was not broken before agents found it. Just because Sarabia offered a hypothesis of innocence does not mean that the jury was required to accept it. *See Evans*, 892 F.3d at 702.

For the foregoing reasons, based on the evidence adduced at trial, a rational jury could conclude that Sarabia knowingly possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

## IV.

We review multiplicity challenges de novo. *United States v. Woerner*, 709 F.3d 527, 538 (5th Cir. 2013) (citing *United States v. Kimbrough*, 69 F.3d 723, 728-29 (5th Cir. 1995)). The Double Jeopardy Clause of the Fifth Amendment "prohibits the [g]overnment from charging a single offense in several counts and is intended to prevent multiple punishments for the same act." *Kimbrough*, 69 F.3d at 729. As relevant here, convictions are multiplicitous where the defendant is charged with and convicted of violating two distinct statutes based on the same underlying conduct where one statute is a lesser-included offense of the other.[2] *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Woerner*, 709 F.3d at 539; *United States v. Winstead*, 717 F. App'x 369, 371 (5th Cir. 2017).

In analyzing whether Sarabia's convictions are multiplicitous and thus violate the Double Jeopardy Clause, we must ask whether the jury could reasonably conclude that Sarabia received and possessed different depictions of child pornography at different times. *Winstead*, 717 F. App'x at 371 ("Because the jury could have determined that Winstead received and

---

[2] To be sure, Sarabia is correct that the district court did not actually avoid a multiplicity issue by declining to impose additional prison time or a period of supervised release on the possession counts. This is so because Sarabia was still convicted of the possession counts, even if no additional prison time was imposed, and a special assessment was imposed on each of those counts. As this court has previously explained, "for purposes of double jeopardy, a 'separate conviction, apart from the concurrent sentence, has potential adverse . . . consequences.'" *Kimbrough*, 69 F.3d at 729 (quoting *Ball v. United States*, 470 U.S. 856, 865 (1985)). In other words, a conviction, even if it does not carry a sentence of additional prison time, can still be multiplicitous. *See id.* (citing *United States v. Berry*, 977 F.2d 915, 920 (5th Cir. 1992)).

No. 20-50438

possessed different depictions of child pornography at different times, the offenses did not involve the 'same act or transaction' and so were not based on the same underlying conduct" (quoting *Blockburger*, 284 U.S. at 304)); *cf. United States v. Gallardo*, 915 F.2d 149, 151 (5th Cir. 1990) (holding that mailing four child-pornography photographs in separate envelopes at the same time could be punishable by four separate counts because the statute's "central focus" was the "act of either *transporting* or *shipping*" child pornography and so mailing each envelope constituted a separate act) (emphasis in original). Because the answer to that question is yes, Sarabia's convictions are not multiplicitous.

As this court has previously found, "regardless whether possessing child pornography is a lesser-included offense of receiving it," Sarabia's sentences are not multiplicitous because the government presented evidence "that a large number of images and videos containing child pornography were downloaded and possessed" on Sarabia's phones "during the separate time periods alleged in the indictment" for Counts II and III (the "receiving" counts) and Counts IV and V (the "possession" counts). *Winstead*, 717 F. App'x at 371.

In this case, the indictment alleged different dates for the receipt and possession counts. Specifically, it alleged that he knowingly received child pornography on the ZTE phone between August 31, 2017, and September 2017, and knowingly possessed child pornography on the ZTE phone on or about November 30, 2017; it alleged that he knowingly received child pornography on the Samsung phone between February 23, 2017, and April 22, 2017, and knowingly possessed child pornography on the Samsung phone on or about November 30, 2017. And the evidence adduced at trial supported as much. For example, the jury heard testimony from a special agent that a video depicting sexual activities of a minor was downloaded on August 31, 2017, on the ZTE phone, and the jury heard testimony and saw evidence that

a video was downloaded to the ZTE phone on October 24, 2017, and on November 4, 2017. Similarly, the jury heard testimony that the Samsung phone received child pornography files on April 22, 2017, and that the FBI downloaded twelve sexually explicit images of a minor on November 24, 2017, from Sarabia's IP address associated with the Samsung phone. Further, given the large number of images and videos, the jury could infer that Sarabia obtained the files through different transactions at different times. *See Woerner*, 709 F.3d at 540. And lest there be any confusion regarding that evidence and the counts charged, the district court provided separate jury instructions on receipt and possession and noted the dates associated with each count.[3]

Against that backdrop, the jury could have determined that Sarabia received and possessed different depictions of child pornography at different times and the offenses did not involve the "same act or transaction." *Id.* (quoting *Blockburger*, 284 U.S. at 304); *cf. Kimbrough*, 69 F.3d at 729 (finding that receipt and possession convictions were multiplicitous where, *inter alia*, the alleged violations occurred on or about the same date). Plainly, the jury could have rationally concluded that the offenses "were not based on the

---

[3] It is true that the district court denied Sarabia's request that the jury specifically find separate conduct on the receipt and possession counts and use a special verdict form to make those findings clear. But the district court provided separate instructions regarding receipt and possession, including referencing the different dates alleged as to each count, and nothing required the district court to provide a special verdict form, *see* Fed. R. Civ. P. 49(a)(1) (noting that "a court *may* require a jury to return only a special verdict in the form of a special written finding on each of fact") (emphasis added); *cf. United States v. Schales*, 546 F.3d 965, 980 (9th Cir. 2008) (finding a Double Jeopardy Clause violation where the government argued to the jury that it could convict the defendant on receipt and possession of child pornography based on a *single* image, and nothing in the record indicated to the jury that it would have to find separate conduct for the receipt and possession counts).

No. 20-50438

same underlying conduct." *Winstead*, 717 F. App'x at 371 (citing *Blockburger*, 284 U.S. at 304).

## V.

Regarding his sentence, Sarabia challenges the application of the distribution enhancement, the denial of the receipt-only reduction, and a condition of supervised release. We discuss each challenge in turn.

*1. The district court did not clearly err in applying the distribution enhancement and declining to apply the receipt-only reduction.*

We "review the district court's application and interpretation of the [S]entencing [G]uidelines de novo and its factual findings for clear error." *United States v. Gonzalez–Terrazas*, 529 F.3d 293, 296 (5th Cir. 2008). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Calbat*, 266 F.3d 358, 364 (5th Cir. 2001). And the clear-error standard is deferential such that even if we "would have weighed the evidence differently," we "will not set aside—so long as they are plausible—the district court's factual findings." *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019) (quoting *United States v. Harris*, 434 F.3d 767, 773 (5th Cir. 2005)).

The district court increased Sarabia's offense level for "knowingly engag[ing] in distribution" of child pornography under U.S.S.G. § 2G2.2(b)(3)(F). In applying the enhancement, the district court looked to Sarabia's relevant conduct, which can include conduct for which the jury did not convict him. *United States v. Landreneau*, 967 F.3d 443, 454 (5th Cir. 2020), *cert. denied*, No. 20-6931, 2021 WL 666767 (U.S. Feb. 22, 2021). Accordingly, applying the enhancement is a factual finding reviewed only for clear error. *United States v. Lawrence*, 920 F.3d 331, 337 (5th Cir. 2019). We have previously upheld the distribution enhancement where a defendant "kn[e]w[] that his use of a peer-to-peer network makes his child pornography

13

files accessible to others online." *Id.* at 336. In this case, the district court concluded that a preponderance of the evidence supported exactly that—i.e. that Sarabia knew that the peer-to-peer file sharing program he used would allow him to share child pornography files through his IP address. It does not matter that the jury did not convict him of the distribution count. *Landreneau*, 967 F.3d at 454. As such, the application of the distribution enhancement was not clearly erroneous.

Sarabia also argues that the district court should have applied a reduction for receipt of child pornography without the intent to distribute. Specifically, the guidelines reduce an offense level if, *inter alia*, "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor," and he "did not intend to traffic in, or distribute, such material." USSG § 2G2.2(a)(2), (b)(1). But, as discussed above, there was no clear error in the district court's determination that Sarabia intended to distribute material involving the sexual exploitation of a minor.[4] As such, Sarabia did not meet the requirements of the receipt-only reduction. Therefore, there was no error in the district court's decision not to apply the reduction.

---

[4] Further, denying the receipt-only reduction was not clear error because Sarabia's conduct was simply not limited to receipt or solicitation given that he used a file-sharing software from which others could download child pornography. *See United States v. Goluba*, 672 F.3d 304, 307 (5th Cir. 2012) (explaining that the reduction is available "only when the defendant's *conduct* was limited to the receipt or solicitation of material involving the sexual exploitation of a minor that the defendant did not intend to distribute" and that the conduct need not be "limited to the conduct expressly constituting the charged offense") (emphasis in original); *see also United States v. Bleau*, 930 F.3d 35, 39–40 (2d Cir. 2019) (explaining that where a defendant used a peer-to-peer filing-sharing software, "regardless of [his] intent, his conduct was indisputably 'related to' the transfer and distribution of child pornography") (quoting U.S.S.G. § 2G2.2(b)(1)).

*2. Sarabia's challenge to the condition of supervised release is not ripe.*

When properly objected to below, we review a discretionary condition of supervised release for abuse of discretion. *United States v. Duke*, 788 F.3d 392, 398 (5th Cir. 2015). And the district court's discretion in choosing conditions is "wide." *United States v. Hinojosa*, 956 F.3d 331, 334 (5th Cir. 2020). But a challenge to a condition of supervised release is not ripe for our review if the claim is contingent on future events. *United States v. Harris*, 960 F.3d 689, 695–96 (5th Cir. 2020).

Sarabia's challenge to the condition of supervised release is not ripe for review. As we have previously explained, the ripeness inquiry "focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Harris*, 960 F.3d at 695-96 (quoting *United States v. Magana*, 837 F.3d 457, 459 (5th Cir. 2016)). And an appeal challenging such a condition "is not ripe if it is 'a matter of conjecture' whether the requirements of the condition will take effect." *Id.* at 696 (quoting *Magana*, 837 F.3d at 459).

In this case, Sarabia challenges the condition of supervised release prohibiting his unsupervised association with children. His challenge is grounded in the condition's inclusion of children who are family members, namely his own children and grandchildren. By the time Sarabia leaves prison, however, all of his children will be adults (over the age of eighteen). At present, he does not have any grandchildren. Therefore, this aspect of his appeal is a hypothetical challenge, that is, "a matter of conjecture," over which we lack jurisdiction.[5] *See id.* at 695–96 (noting that an objection to a condition of supervised release is not ripe if "it rests upon contingent future

---

[5] To be sure, ripeness goes to our subject-matter jurisdiction. *Magana*, 837 F.3d at 459. And so, where a challenge is not yet ripe, we lack subject-matter jurisdiction.

No. 20-50438

events that may not occur as anticipated, or indeed may not occur at all" (quoting *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003)). Accordingly, we dismiss this challenge for lack of subject-matter jurisdiction.

## VI.

For the foregoing reasons, we AFFIRM the district court, but we DISMISS Sarabia's challenge to the condition of supervised release for lack of subject-matter jurisdiction because it is unripe.